JOHN SANDFORT AND HENRY SANDFORT, Jr., T/A SANDFORT BROTHERS, PROSECUTORS, v. CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND LAWRENCE B. HAINES, OF WESTVILLE, NEW JERSEY, RESPONDENTS.

Argued May 7, 1946—Decided June 5, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutors, Morgan E. Thomas.

For Atlantic City, Leon Leonard and Chaim H. Sandler.

For Lawrence B. Haines, Emerson L. Richards.

The opinion of the court was delivered by

BODINE, J. The award of the garbage collection contract to Lawrence B. Haines is challenged in this proceeding. The City of Atlantic City advertised for bids and bids were received. A hearing upon the following bids was held November 27th, 1945. The bidders and the amount of the bids were as follows:

Lawrence B. Haines ............ . .. $14,499.00
Roy Branca and Charles Engelhardt . ..... 11,500.00
Sandfort Brothers ... ............ .... . . 3,999.99
Steve Waszen & Sons ............ .,. . .. 6,000.00

The governing body in asking bids for the performance of the contract, which had been prepared pursuant to *R. S.* 40 :66–4, was controlled in the award of the contract by the provisions of *R. S.* 40 :50–1, which requires that the contract shall be awarded to the lowest responsible bidder. After the hearing, the contract was awarded to Haines who happens to have been the high bidder. It was the contention of the prosecutors that they were responsible bidders. The proofs, in our judgment, do not so indicate.

It was sought to rest prosecutors' case upon their financial responsibility and the sufficiency of their equipment. *Peluso* v. *Hoboken*, 98 *N. J. L.* 706.

The question for the determination of the governing body was whether the prosecutors were so lacking in experience, financial ability, machinery and facilities so as to justify the belief upon the part of fair minded men that they would be unable to carry out the contract if it was awarded to them. *Paterson Contracting Co.* v. *Hackensack*, 99 *N. J. L.* 260.

In every case, it is one of fact and the question is whether the action of the governing officials was done in good faith and for the best interests of the public at large.

The prosecutors had been under contract for the work in question during the year 1945. In many parts of the city the garbage was uncollected, householders burned it in shallow plots of ground, some took it to the dump; it was dumped in the thoroughfares and basins around the town. The city was overrun with maggots, vermin and rats, due to the non-collection of garbage. Large sums were expended in an effort to exterminate the rats. The office of the Board of Health received 4,698 complaints respecting the manner in which the garbage was left to ferment upon the sidewalks. Assuming that many of the complaints were repetitious and that some of the householders lacked proper utensils for placing the garbage on the streets, still there is no denial that failure properly to collect the garbage resulted in an unhealthy and undesirable condition in the city.

The prosecutors' method was to sell collection rights to Atlantic County farmers, who used the garbage to feed their hogs. When they needed feed for these animals they took it

and when they did not they left it, and the prosecutors seem to have had no control whatever over their collectors.

The mayor of the city testified that he could not abrogate the contract, which the city had with the prosecutors, because he was fearful that he could not get any one to do anything about it. He tried in a friendly manner to get prosecutors to do the work. Any action brought upon their bond or fine imposed might have resulted in their failure to act at all.

Haines, the successful bidder, had the contract during the mayor's previous term and his organization and his executive ability had accomplished wonders, as it has since he took over after the award of the contract in question.

The mayor also testified, which seems only reasonable, that a contractor should own enough trucks to insure collection. When a complaint is made a truck should be immediately available to go to the area and collect where the collectors have failed to perform. This was not the prosecutor's system, but everything was left to the will of the subcontractors and they only took the garbage when they desired it.

When Haines took over, it took him weeks to clean up the city. In December, they found rotten watermelon rinds and garbage that was not good to feed pigs because it was black and rotten. The responsibility in the collection of garbage must mean far more than the ability to meet one's personal obligations. It is of no consequence that a contractor is able to pay his debts if he has neither the ability nor the business experience or adequate equipment to insure performance of his contract. Certainly, the bonding company is not apt to come in and perform, and money damages are a poor substitute for the accumulation of filth and vermin in a city advertised for its health giving advantages.

There is a good deal of doubt whether the prosecutors' bid complied with the specifications. In the first instance, no financial statement as to their worth accompanied their bid. It may be that this fault was subsequently cured; but we do not decide the point because it seems to us unnecessary.

There is no question before us as to any rights claimed by the intermediate bidders.

We see no merit in the fact that Commissioner Bader was

in and out of the room during the hearing. His vote was not necessary to a determination upon the merits which was taken by the majority of the Board of Commissioners. The determination that prosecutors were not responsible bidders seems to us to have been reached after a reasonable hearing and the result was one that only fair minded and reasonable men could have reached.

The proofs show that it was not a case of a disagreement between the city officials and the prosecutors, but a case where the prosecutors absolutely failed to satisfactorily perform because of their inability to control their subcontractors. They created a situation which was dangerous to the inhabitants of the city and might have resulted in epidemics of disease which would have seriously undermined the public health.

The writ will be dismissed, with costs.