86 N.J. Super. 484 (1965)
207 A.2d 219
ALFRED T. POLING AND JAMES PETROZELLO COMPANY, INC. AND MAPLEWOOD DISPOSAL COMPANY, A JOINT VENTURE, PLAINTIFFS,
v.
JOSEPH ROMAN, JR. AND THE MAYOR AND COUNCIL OF THE BOROUGH OF KEYPORT, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 3, 1965.
*487 Mr. Merritt Lane, Jr. for plaintiffs (Messrs. McCarter & English, attorneys).
Mr. Sidney Sawyer for defendant Joseph Roman, Jr. (Messrs. Philo, Rothenberg & Sawyer, attorneys).
Mr. Michael J. Barnacle for defendant Mayor and Council of the Borough of Keyport (Messrs. Pillsbury, Carton & Barnacle, attorneys).
SIMMILL, J.S.C.
On December 3, 1964 the Borough of Keyport advertised for bids for the removal of trash and garbage for the period from January 1, 1965 through December 31, 1966. Specifications which are subsequently discussed were included in the advertisement. The bids submitted were opened at the council meeting of December 14, 1964. The three bids that were so received were as follows:

 James Petrozello Company, Inc. and
 Maplewood Disposal Company, a
 joint venture $3,000 per month
 Joseph Roman, Jr. $3,600 per month
 MJS Enterprises $3,800 per month

The council, after a caucus, announced that it would hold the matter over for further study and at the meeting of December 28, 1964, passed a resolution rejecting all bids and adopting new specifications, bids to be received on January 25, 1965. Since the contract with defendant Joseph Roman was to expire on December 31, 1964, the council passed a resolution permitting the defendant to continue to remove garbage at a rate of $3,300 per month.
Plaintiffs, the lowest bidder and a citizen taxpayer, thereupon commenced this action in lieu of prerogative writs to set aside the action of the governing body and to compel the awarding of the contract to them as the lowest bidder. They also seek to enjoin the temporary contract to defendant Roman and also to enjoin the defendant council from making any payments to Joseph Roman, Jr., under that contract.
*488 The legislative authority for the municipality to contract for garbage collection services is found in N.J.S.A. 40:66-4. That section provides in part:
"* * * Before making any such contract or contracts the governing body shall first adopt specifications for the doing of the work in a sanitary and inoffensive manner, and any such contract * * * shall be entered into and made only after bids shall have been advertised therefor, and awarded in the manner provided in chapter fifty of this Title (§ 40:50-1 et seq.). * * *"
N.J.S.A. 40:50-1 provides:
"No municipality shall enter into any contract * * * unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder, * * *."
Defendant borough contends it had the right to reject all bids and readvertise for bids, and thus its action was proper. In support of this contention defendant quotes the language from several cases to the effect that a municipality must award the contract to the lowest responsible bidder or else reject all bids. Every case cited by the defendant relies on the holding of Armitage v. Newark, 86 N.J.L. 5 (Sup. Ct. 1914), wherein the court found the statute then in effect to allow for the rejection of any and all bids. Subsequent to Armitage the statute was amended and the proviso giving the power to reject any and all bids was deleted. Therefore, there is no statutory power to reject all bids. Nor can the borough rely on a reserved right to reject all bids, since no reservation was contained in the advertisement. It would thus appear that there was no authority whatsoever to reject all bids.
However, it is unnecessary to decide this troublesome problem since "even where the right to reject any and all bids is properly reserved, the statute may not be evaded `under the color of the rejection "of any and all bids."'" Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 91 (1953).
No case has been cited, nor does research disclose any prior adjudication where a municipality was held to have the right to reject bids summarily in the absence of a reservation to *489 that effect, except Armitage, supra, where there was a statutory right of rejection.
The rationale of Scatuorchio, supra; Venneri Co. v. Paterson Housing Authority, 29 N.J. 392 (1959), and Sellito v. Cedar Grove, 132 N.J.L. 29 (Sup. Ct. 1944), is to the effect that in order for a municipality to reject bids there must be evidence of such a character as would cause reasonable men to believe that it was not in the best interests of the municipality to award the contract to the lowest bidder.
The basic policy of the bidding laws is to encourage competition which should lower the cost and protect the public purse. Asbury Park Press v. City of Asbury Park, 23 N.J. 50 (1956). It is recognized that the preparation of bids takes the time and expense of prospective bidders. The summary and arbitrary rejection of all bids would necessarily limit the number of bids received, with probable attendant higher cost. Paterson Contracting Co. v. Hackensack, 99 N.J.L. 260, 264 (E. & A. 1923) holds:
"* * * The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders. To reject the bid of the lowest bidder there must be such evidence of the irresponsibility of the bidder as would cause fair-minded and reasonable men to believe that it was not for the best interest of the municipality to award the contract to the lowest bidder. * * *" (Emphasis added)
This court, therefore, is of the opinion that absent a reservation a municipality may not arbitrarily or capriciously reject all bids, but must award the contract to the lowest responsible bidder unless fair-minded and reasonable men would deem it not in the best interests of the municipality.
By this holding the court does not intend to foreclose the municipality from inquiring into the responsibility of the lowest bidder, his experience, financial ability, facilities, ability to perform the contract or moral integrity. Venneri Co. v. Paterson Housing Authority, supra, at p. 403. That case also indicates that a hearing should be held inquiring into such responsibility.
*490 The defendant borough also contends that the specifications in the advertisement for bids were never adopted by formal resolution of the governing body. The second lowest bidder, Roman, had had the trash and garbage collection contract in the Borough of Keyport for many years on contracts which were awarded on the same specifications. At the meeting prior to the advertisement the borough clerk was authorized to publish "the Garbage Contract specifications." The specifications were advertised  the same specifications on which Roman bid and on which he had successfully bid in prior years. Defendant urges that the effect of the authorization to the borough clerk to publish "the Garbage Contract specifications" is the improper delegation of a legislative function. This court holds to the contrary. The clerk was authorized to perform an act which was merely ministerial. By motion the governing body adopted the specifications and necessarily referred to the specifications which theretofore had existed. The mere act of publishing was a ministerial act which was not within the proscription of delegation of legislative powers. The act of the borough clerk involved no exercise of discretion or judgment. LaPolla v. Board of Chosen Freeholders of Union County, 71 N.J. Super. 264 (Law Div. 1961).
In short, this court rules that defendant must award the contract to plaintiff unless it determines in good faith, after hearing, that plaintiff is not a responsible bidder. If such a hearing is to be held, the borough is mandated to act with diligence, else the court may consider lack of diligence as lack of good faith.
As to the demand of plaintiff that the temporary contract and payment to Roman thereunder be enjoined, there is no doubt that the absence of trash and garbage collection creates an emergency. In the absence of a contract the borough could properly award a contract on an emergency basis. See N.J.S.A. 40:50-1. Indeed, the exigencies of public service demanded that some disposition be made of the trash and garbage. Obviously it could not be permitted to *491 accumulate. If the municipality acted in good faith in awarding the temporary contract under the exigency which existed, recovery on quantum meruit can be had. Hudson City, etc. v. Jersey City Incinerator Authority, 17 N.J. 297, 309 (1955). In any event, subsequent developments may be dispositive of this phase of the case. It is not ripe for determination at this stage.