115 N.J. Super. 326 (1971)
279 A.2d 860
REMSCO ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND JOSEPH WENDLINGER, PLAINTIFFS-APPELLANTS,
v.
RARITAN TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A BODY PUBLIC, POLITIC AND CORPORATE (AND EIGHT OTHERS), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1971.
Decided June 28, 1971.
*328 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. William J. O'Hagan, Jr. argued the cause for appellants (Messrs. Stout, O'Hagan, DeVito & Hertz, attorneys).
Mr. Sydney S. Souter argued the cause for respondent The Raritan Township Municipal Utilities Authority (Mr. Alfred L. Kettell, Jr., on the brief).
Mr. Seymour I. Marcus argued the cause for respondent Perkins, Kanak and Foster, Inc. (Messrs. Levy, Levy, Albert & Marcus, attorneys).
Mr. Alfred A. Porro, Jr., attorney for respondents Municiplex, Inc. and Gibraltar Securities Co., filed a brief.
The opinion of the court was delivered by KOLOVSKY, J.A.D.
A three-count complaint was filed in this action on June 11, 1970 by a taxpayer of Raritan Township and by Remsco Associates, Inc. (Remsco), allegedly the lowest bidder responding to an invitation for bids for the construction of a sewage treatment plant advertised by defendant Raritan Township Municipal Utilities Authority (the Authority).
The first count sought an adjudication that the Authority acted illegally when, on April 28, 1970, it awarded the contract for such construction to defendant Perkins, Kanak & Foster, Inc. (P.K. & F.) instead of to plaintiff Remsco. The second count demanded damages from the individual *329 members of the Authority; the third sought a determination that the sale of the Authority's bonds was "invalid."
The trial court granted defendants' motion for summary judgment on all three counts; this appeal followed. Plaintiffs have expressly abandoned their appeal from the grant of summary judgment on the second and third counts, leaving for our consideration only the propriety of the grant of summary judgment on the first count.
The Authority was created pursuant to the Municipal Utilities Authorities Law, N.J.S.A. 40:14B-1 et seq. It advertised for bids on three contracts: Contract No. 1, for sewer lines, trunks, and collector systems; Contract No. 2, for the construction of a sewage treatment plant, and Contract No. 3, for pumping stations.
At the Authority's meeting of April 10, 1970 plaintiff Remsco, defendant P.K. & F. and several other companies submitted bids on Contract No. 2. Remsco's total bid was $1,975,000; P.K. & F.'s was $2,154,000. The bids were referred to the Authority's engineer for his examination and report.
At its meeting of April 15, 1970 the Authority was advised by its engineer and attorney that irregularities in Remsco's bid made it impossible to determine whether Remsco or P.K. & F. was in fact the low bidder. Remsco requested a public hearing to review its bid. That hearing took place at a special meeting of the Authority held on April 28, 1970 at which representatives of Remsco (its vice-president) and P.K. & F. were present.
The minutes of the meeting disclose that it opened with a statement by the Authority's attorney, that
* * * there were several things about the bid of Remsco, Inc. that bothered the Authority; namely, Remsco, Inc. did not appear to follow bidding instructions in two areas and failed to complete either the required information for alternate equipment or the required information for subcontractors. Mr. Souter read paragraph 16 "Substitution of Equal Products" contained in the instructions to Bidders on page I-6 and referred to page C-1B where the instructions required the contractor to complete information in four *330 categories if the contractor intends to substitute major equipment or products. These four categories are Product of Manufacturer, Alternate Manufacturer, Addition in Price and Decrease in Price.
Remsco's representative did not dispute that its bid did not indicate either what its bid would be if it furnished the equipment specified in the instructions to bidders or what, if any, the difference in price would be if it furnished some ten items of equipment which it proposed to substitute for the specified items and which its bid stated were equal to the specified items. Rather, he contended that "he was not obliged to list any differences in price" and that any differences should inure to Remsco's benefit and not to the Authority.
When pressed as to whether Remsco would perform the contract for its bid of $1,975,000 if the Authority insisted on the use of the specified items, he said, "I'm not prepared to answer but our bid would probably be about $100,000 greater." (Defendants contend that a week earlier Remsco had told the Authority's engineer it would be approximately $150,000 higher.)
Following some additional colloquy and statements by the Authority's engineer and attorney, respectively, as to why they had "concluded that the bid of Remsco, Inc. is not in proper form and so improperly prepared that it is not possible to determine the actual cost to the Authority if specific equipment is required," the Authority adopted a resolution rejecting Remsco's bid and a second resolution "tentatively" awarding the contract to P.K. & F., the "bona fide" low bidder. The "tentative" nature of the award was eliminated when "the State and Federal authorities" involved in the financing of the construction approved the Authority's action.
Thereafter, on June 3, 1970, at Remsco's request, the Authority again met with Remsco's attorney to consider legal arguments presented by him in support of his claim that the award of the contract to P.K. & F. should be rescinded. The Authority's reaction to the legal arguments is embodied in the resolution adopted by it at its meeting of June 11, 1970. The resolution set forth the Authority's conclusion that "the *331 legal arguments advanced by Remsco Associates, Inc. are not persuasive and that Remsco Associates, Inc. has otherwise failed to cure the defects in its bid," and "resolved that the request of Remsco Associates, Inc. that the Authority rescind its award of April 28, 1970 be, and hereby is denied."
On the very same day, June 11, 1970, plaintiffs filed the verified complaint herein and obtained an order to show cause, returnable June 26, 1970, which among other things restrained defendants "from executing [the contract] and pursuing any work in connection therewith." Defendants then served motions, supported by affidavits, seeking (1) to dissolve the restraints and (2) summary judgment.
After hearing argument on June 19, 1970 the court ruled that the restraints would be dissolved. On June 22, 1970 an amended complaint was filed joining additional taxpayers as parties plaintiff. On July 10, 1970 the court heard argument on and granted defendants' motions for summary judgment. The order for judgment was entered on September 30, 1970.
Plaintiffs filed their notice of appeal on November 4, 1970. However, plaintiffs did not seek a reinstatement of the restraints pending appeal. At oral argument we learned not only that the contract between the Authority and P.K. & F. had been executed but also that by then more than 95% of the work called for by the contract had been completed.
Plaintiffs argue here, as they did in the trial court, that the Authority was obligated under N.J.S.A. 40:50-1 to award the contract to the lowest responsible bidder; that Remsco was the lowest responsible bidder, or at least that the proofs indicated a factual dispute on that issue so that it was error to grant summary judgment.
The trial judge ruled that Remsco's bid did not comply with the instructions to bidders because it did not specify, as was required, "a plus or minus figure by virtue of the use of [the] alternatives" which Remsco proposed to use. He chose, however, to base his grant of summary judgment not on that ruling but on his further determination that the restrictions contained in N.J.S.A. 40:50-1, that
*332 No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $2,500.00, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder,
are, by virtue of N.J.S.A. 40:14B-68, inapplicable to an authority created under the Municipal Utilities Authorities Law, N.J.S.A. 40:14B-1 et seq.
We agree with the trial court that the Legislature has by N.J.S.A. 40:14B-68 exempted municipal utilities authorities from compliance with N.J.S.A. 40:50-1 when awarding a contract such as is here involved. It is therefore immaterial that absent the exempting language of section 68 of N.J.S.A. 40:14B, N.J.S.A. 40:50-1 would control the exercise of such contract powers by an authority or body created to perform municipal functions. See Glick v. Trustees of Free Public Library, 2 N.J. 579, 582-585 (1949).
N.J.S.A. 40:14B-68 is clear and explicit:
This act shall be construed liberally to effectuate the legislative
intent and as complete and independent authority for the performance of each and every act and thing herein authorized, and a municipal authority [created under N.J.S.A. 40:14B-4] shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes * * *.
That the language used in section 68 is effective to relieve the Authority from compliance with N.J.S.A. 40:50-1 is evident. Similar language used in N.J.S.A. 40:11A-23(4), a section of the Parking Authority Law, viz.,
A parking authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provision of Title 40 of the Revised Statutes,
has been recognized as having that effect. See Broadway Nat'l Bank of Bayonne v. Parking Authority, Bayonne, 40 N.J. 227 (1963):
*333 Indeed, an authority has broader powers in some respects than the municipality which created it, e.g., it is not bound by Chapter 50 of Title 40, which imposes restrictions upon the power of municipalities to enter into contracts. N.J.S.A. 40:11A-23(4). [At 233]
Although the argument was not advanced in the trial court, on appeal plaintiffs contend that even if N.J.S.A. 40:50-1 does not apply to municipal utilities authorities, nevertheless the Authority was obligated to award the contract to Remsco as the low bidder and that its refusal to do so "constituted an unreasonable, arbitrary and capricious act" which the court should set aside.
Plaintiffs' failure to raise the point at the trial level is itself fatal to their attempt to argue it here. Moreover, on the merits, the contention finds no support in the record or in the governing law. There is no indication in the proofs submitted on the motion for summary judgment that the Authority acted in bad faith; quite the contrary. Absent a showing of bad faith, the rule applicable to the situation where N.J.S.A. 40:50-1 does not apply is that set forth in A.C. Schultes & Sons v. Haddon Tp., 8 N.J. 103:
If the statutes do not apply, the municipality had the right to award the contract in question to the bidder it felt would best serve the interests of its taxpayers. [Citations omitted] Even though the municipality actually advertised as it did here, nevertheless, if the statutes are inapplicable, there is no obligation upon the city to award the contract to the low bidder. [At 107-108]
Further, we note that even if N.J.S.A. 40:50-1 were to be deemed applicable to the Authority, summary judgment was properly granted in defendants' favor. The only relevant proofs on the motion  the specifications or instructions to bidders and Remsco's bid  established without contradiction that its bid did not comply with the instructions to bidders. Remsco was therefore not the "lowest bidder." Hillside Tp. v. Sternin, 25 N.J. 317 (1957):
*334 The law is clear that bids must meet the terms of the notice. The significance of the expression "lowest bidder" is not restricted to the amount of the bid; it means also that the bid conforms with the specifications. * * * Minor or inconsequential variances and technical omissions may be the subject of waiver. * * * But any material departure stands in the way of a valid contract, and the defaulting person cannot be classed as a bidder at all." [At 324; citations omitted]
Here the instructions to bidders required the bidder affirmatively to indicate the amount of the additions or decreases in price if the alternate products it proposed to use were accepted by the Authority, and also the names of the subcontractors it proposed to employ. The requirements are reasonable. There was no warrant for Remsco's ignoring them as it did by leaving blank the spaces calling for the differences in price and by answering "not known" to the question asking for the names of its proposed subcontractors. Those material departures from the specifications may not be disregarded. Cf. J. Turco Paving Contractor Inc. v. City Council of Orange, 89 N.J. Super. 93, 103 (App. Div. 1965).
The judgment is affirmed.
CARTON, J.A.D. (concurring).
I would affirm on the ground that Remsco did not comply with the bidding requirements and therefore was not the lowest responsible bidder. Consequently, in my view, it is not necessary to decide whether the Legislature intended to exempt a municipal authority from the bidding requirements applicable to municipalities themselves. Nor is it necessary to consider whether plaintiff may also be barred by reason of estoppel and public policy inasmuch as no restraints were sought pending this appeal and as a consequence the contract has been nearly completed.