258 N.J. Super. 129 (1992)
609 A.2d 112
ACE-MANZO, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND D. MANZO & SON, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
TOWNSHIP OF NEPTUNE, A BODY POLITIC OF THE STATE OF NEW JERSEY AND THE COUNTY OF MONMOUTH AND NORTH BRUNSWICK PAVING, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided April 24, 1992.
*131 Thomas S. Cosma for plaintiff (Connell, Foley & Geiser, attorneys).
P. Kevin Missett for defendant Township of Neptune (Beekman & Missett, attorneys).
Vincent P. DeAndrea, Jr. for defendant North Brunswick Paving, Inc.

OPINION
MILBERG, A.J.S.C.
This case involves a public contract for storm drainage improvements in the Township of Neptune, Monmouth County. The project is governed by the Local Public Contracts Law N.J.S.A. 40A:11-1 et seq. Two questions are presented. The first which has not heretofore been addressed by the courts of this State is whether the failure to execute the bid proposal constitutes a material defect of a bid. The second which has been a troublesome one for municipalities, is when may a municipality which has reserved the right to reject all bids do so after it has determined that the lowest numerical bid is unresponsive. I conclude that the failure to execute a bid proposal constitutes a material defect and cannot be waived. I further conclude that the plaintiffs, the second lowest numerical bidder is the lowest responsive bidder and should have been awarded the contract.
The facts are not in dispute. On December 19, 1991, the Township of Neptune, advertised pursuant to N.J.S.A. 40A:11-1 et seq. for bids on a public works project known as "Phase I, Heck Avenue Storm Drainage Improvements in the Township of Neptune, Monmouth County, New Jersey" with a bid opening date of January 9, 1992. The published notice contained the following statement usually found in such solicitations for public contracts:
"The Mayor and Committee reserve the right to reject any and all bids or to waive any and all informality of any bid".
*132 On January 9, 1992, the bids were opened. North Brunswick Paving, Inc. (hereinafter referred to as North Brunswick) submitted the lowest bid in the sum of $287,763.03. The next lowest bid in the sum of $326,393.00 was submitted by Ace-Manzo, Inc. and D. Manzo and Son, Inc. (hereinafter referred to as Manzo); however, North Brunswick failed to complete and execute Page four of the bid proposal form. Neptune Township (hereinafter referred to as Neptune) determined that the bid submitted by North Brunswick was nonresponsive and therefore unacceptable due to the bidder's failure to complete and execute Page four of the bid proposal form. However, instead of awarding the contract to Manzo as the next lowest responsive bidder, Neptune approved a resolution rejecting all bids submitted on January 9, 1992 and authorized the advertisement for new bids.
Neptune readvertised for bids on the project with a bid opening date of February 6, 1992. Prior to the opening of the bids on February 6, 1992, Manzo filed this action in lieu of prerogative writs for a restraining order and to compel Neptune to award the contract to it as the lowest responsive bidder.
On February 5, 1992 I restrained Neptune from opening the readvertised bids for the project pending a final hearing. North Brunswick now crossclaims against Neptune and counterclaims against Manzo challenging the rejection of its original bid by Neptune.
The notice to bidders required that bids be submitted on a standard proposal form. The proposal form is a four page document. It begins on Page one by stating that "the bidder declares that it has read the plans and specifications, and contract documents, has examined the site and has determined for himself the condition effecting the work and he proposes and agrees if any bid is accepted to provide at his own expense, all labor, insurance, superintendence machinery, plans, equipment, tools, apparatus, appliances and means of construction and all other materials and supplies, and to complete ready for *133 its intended purpose, the entire work and all parts thereof described as included under this Contract prior to completion date described under Article IX of Information to Bidders ... (emphasis in original)." There are further representations, covenants and agreements contained in the Proposal Form which proceed unit price listings on Page two and Page three of the Proposal Form and culminate with the execution on Page four of the Proposal Form by the bidder. Page four which was not completed or executed by North Brunswick stated the following:
There is presented herewith:
A certified check, cashier's check, or bid bond in the amount of $ ____ payable to the order of the Township of Neptune, which the undersigned bidder agrees to forfeit as liquidated damages to the Owner, if written notice of the acceptance of this bid is mailed, telegraphed, or delivered to the undersigned bidder within sixty (60) days after the date of opening of the bids, or any time thereafter, before this bid is withdrawn and the undersigned fails to deliver executed contact and contract bond within two (2) weeks after the date of such mailing, telegraphing or delivering of such notice. The undersigned bidder hereby designates as his office to which such notice of acceptance may be mailed, telegraphed, or delivered:

_______________________________________________________________
_______________________________________________________________
 (an individual)
The undersigned bidder is (a partnership) under the law of the
 (a corporation)
State of ___________________________________, having principal
offices at __________________________________________________.
 Signed ___________________
 Title ___________________
 (Seal)
Firm Name __________________
 Address ___________________
 ___________________
 Telephone ___________________
Date ____________

*134 Three days after the bids were opened defendant North Brunswick submitted a complete and executed Page four. Manzo contends that the failure of North Brunswick to submit a completed and executed Page four of the bid form is a material defect which cannot be waived or subsequently corrected and therefore it was proper for Neptune to reject the original bid of North Brunswick.
North Brunswick argues that its failure to complete and execute Page four at the time of submission was at most a mere technical irregularity which in no way affected or threatened the integrity policies behind the competitive bidding Statute or the ability to have the project completed, particularly in view of the fact that it submitted a complete and executed Page four after the opening of the bid.
The issues presented here must be resolved in the context of the express requirements of the Local Public Contract Law N.J.S.A. 40A:11-1 et seq. The statute requires public advertisement for bids and awards of a contract to the lowest responsive bidder. The purpose of the Statute is to secure competition and to guard against favoritism, improvidence, extravagance and corruption, Hillside Twp. v. Sternin, 25 N.J. 317, 136 A.2d 265 (1957). The conditions and specifications must apply equally to all bidders. Therefore, all bids must comply with all of the terms imposed and any material departure therefore invalidates a non-conforming bid. Tp. of River Vale v. R.J. Longo Construction Co., 127 N.J. Super. 207, 316 A.2d 737 (Law Div. 1974). It is well settled that material conditions contained in bidding specifications may not be waived, Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 341 A.2d 327 (1975).
The test of whether a bid condition is material and nonwaivable was set forth in Tp. of River Vale v. R.J. Longo Construction Co., supra:

*135 There must, therefore, be applied two criteria in determining whether a specific non-compliance constitutes a substantial and hence nonwaivable irregularity  first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract would be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. Tp. of River Vale v. R.J. Longo Construction Co., 127 N.J. Super. at 216, 316 A.2d 737; See Hillside Tp. v. Sternin, supra; 10 McQuillin, Municipal corporations (1966 ed). 29.65 at 397.
Conditions which our courts have held to be material and nonwaivable are failing to submit security with a bid Hillside Twp. v. Sternin, 25 N.J. 317, 136 A.2d 265 (1957), failing to deliver a certificate demonstrating a present ability to perform, Albanese v. Machetto, 7 N.J. Super. 188, 72 A.2d 521 (App.Div. 1950) failing to submit a detailed description of materials, Case v. Trenton, 76 N.J.L. 696, 74 A. 672 (E. & A. 1909), ignoring authorities instructions that bidders supply a list of price variations if alternate products are to be used, Remsco Assoc. v. Raritan Tp. Mun. Util. Auth., 115 N.J. Super. 326, 279 A.2d 860 (App.Div. 1971).
Conditions which our courts have held to be inconsequential and waivable are submission of an uncertified check which was later certified, P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 152 A.2d 369 (App.Div. 1959), submission of a bid bond in lieu of certified check, Tp. of River Vale v. R.J. Longo Construction Co., Inc., 127 N.J. Super. 207, 316 A.2d 737 (Law Div. 1974) submission of a cashier's check instead of a certified check, Hornung v. West New York, 82 N.J.L. 266, 81 A. 1116 (Sup.Ct. 1911), a small difference between the amount of security submitted and that specified, Township of Hanover v. International Fidelity Ins. Co., 122 N.J. Super. 544, 301 A.2d 163 (App.Div. 1973) and the arrival of a bid two minutes late, Young v. West Orange Redev. Agency, 125 N.J. Super. 440, 311 A.2d 390 (App.Div. 1973).
While this State has not considered whether the failure to execute a bid is a material, nonwaivable defect, other states and *136 treatises have done so. Commentators have noted that "as a general rule, an unsigned bid will be rejected as nonresponsive on the theory that it does not constitute a binding offer. The competitive advantage that inheres in such a situation is obvious, for it would give such a bidder the option of waiting until it has had the benefit of knowing the other bidders prices before deciding whether to sign and be bound or not sign and walk away." Cushman and Doyle, Construction Bidding Law (1990), 6.13 at p. 147.
In Menefee v. County of Fresno, 163 Cal. App.3d 1175, 210 Cal. Rptr. 99 (Cal. App. 5 Disp. 1985) the California Court of Appeals upheld Fresno County's award of a bid to a low bidder who did not sign the bid in the appropriate place, however, the court did find that the bid proposal was signed in several other places and was accompanied by an executed bid bond. The court reasoned that the low bidder's failure to sign the bid did not give it an unfair advantage over other bidders because the bidder could have been held to the bid if the bidder attempted to withdraw.
In Whitemarsh Township Auth. v. Finelli Brothers, Inc. 408 Pa. 373, 184 A.2d 512 (1962), the Supreme Court of Pennsylvania, citing with approval the New Jersey decision, Hillside Twp. v. Sternin, supra, held that where the Township authority's regulations required that the bid proposal be properly signed and it was not, said failure was nonwaivable and the bid was void.
In Thigpen Const. v. Parish of Jefferson 560 So.2d 947 (La. App. 5 Cir.1990), the Parish of Jefferson advertised for bids for a construction project. The advertisement contained a clause which stated that "the owner reserves the right to reject any and all bids and to waive technicalities and informalities." Thigpen submitted an unsigned bid and it was rejected as not having met the bid requirements. Thigpen then submitted a completed signature page three days later. The Court of Appeals of Louisiana held that the failure to sign the bid was a *137 nonfulfillment of a formal bid requirement (that being  all bids must be signed) and this could not be waived by the Parish.
In George W. Kennedy Construction Co. Inc. v. City of Chicago, 135 Ill. App.3d 306, 90 Ill.Dec. 113, 481 N.E.2d 913 (Ill. App. 1 Dist. 1985), the City of Chicago was presented with an unexecuted signature sheet in a bid much the same way as was Neptune Township. When determining whether a bid variance was material, the Appellate Court of Illinois applied the test of "whether a bid variance gives a bidder a substantial advantage or benefit not enjoyed by other bidders." The court concluded that the failure to properly execute the signature page did not bind Kennedy (the bidder) to his bid, and if awarded the contract, Kennedy could disavow it at any time. This ability to disavow the contract would put Kennedy in a competitively advantageous position in relation to the other bidders. Consequently this was a material defect which rendered the bid unresponsive and necessitated the City to disregard it.
On Page four of the bid form there is a provision that the bidder forfeit the bid bond as liquidated damages in the event the bidder was awarded the contract and failed to execute same. Although a bid bond made payable to Neptune was attached to the bid form, North Brunswick had not agreed to forfeit the bond as liquidated damages. This is a material deviation from the bid solicitation. With no effective signature on Page four of the bid proposal, North Brunswick was not bound to its bid and therefore could walk away from the obligation to perform work on the project. North Brunswick could also await the bid opening, examine all other bids and then decide to sign the bid and be bound. This ability to manipulate the bidding process gave North Brunswick an unfair advantage over the other bidders and compromised fair competition. The required signature of a bidder on Page four of the bid proposal is a material condition and cannot be waived. Tp. of River Vale, supra. For the same reasons, North Brunswick's belated attempt to cure the defect did not and could not *138 cure this fatal flaw. Accordingly, Neptune was correct in rejecting North Brunswick's bid as being nonresponsive since it lacked a material nonwaivable condition.
After properly rejecting the bid of North Brunwick as nonresponsive, Neptune without any further explanation therein for its reasons passed a resolution rejecting all of the bids submitted on January 9, 1992 and authorized the advertisement of new bids. The resolution reads as follows:

RESOLUTION # 34  1/21/92

A RESOLUTION REJECTING ALL BIDS RECEIVED IN CONNECTION WITH THE HECK AVENUE STORM DRAINAGE PROJECT
WHEREAS, Bids have been received and rejected in connection with the "Phase I, Heck Avenue Storm Drainage Improvements in the Township of Neptune, County of Monmouth"; and,
WHEREAS, The Township Committee of the Township of Neptune has the right to reject all bids received.
BE IT RESOLVED, That all bids received on January 9, 1992 be and are hereby rejected in accordance with the Local Public Contracts Law N.J.S.A. 40A:11-5.
BE IT RESOLVED, That the Business Administrator be and is hereby authorized to re-advertise for the "Phase I, Heck Avenue Storm Drainage Improvements".
CERTIFICATION I HEREBY CERTIFY THE ABOVE TO BE A TRUE COPY OF A RESOLUTION ADOPTED BY THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEPTUNE ON 1/21/91
 s/s RICHARD J. COTTRELL
 TOWNSHIP CLERK
It has long been the policy of our courts to support and promote the purposes of the public bidding statute.
*139 In Paterson Contracting Co. v. Hackensack, 99 N.J.L. 260, 122 A. 741 (E. & A. 1923), the Court of Errors and Appeals expressed the purpose of bidding statutes thusly:
* * * To encourage contractors to submit bids for public improvements should be the aim of every community. Numerous bidders create competition. Competition lowers the cost. If bids are rejected arbitrarily or capriciously, contractors will not take the time and expend the money necessary to submit proposals. They will infer favoritism. This will result in a few bidders and higher bids,. The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders. (at 264, 122 A. 741).
Although a municipality has the power to reject bids, how and when that power may be exercised has been a troublesome problem for the courts. Cardell, Inc. v. Tp. of Woodbridge, 115 N.J. Super. 442, 449, 280 A.2d 203 (App.Div. 1971). The mere disqualification of a low bidder does not in itself give a municipality the right to reject all bids. To do so would undermine competitive bidding and discourage competition. The arbitrary rejection of bids has been criticized by our courts. Cardell, Inc. supra. 115 N.J. Super. at 449, 280 A.2d 203, Arthur Venneri Co. v. Paterson Housing Authority, 29 N.J. 392, 403, 149 A.2d 228 (1959), Scatuorchio v. Jersey City Incinerator Authority 14 N.J. 72, 88, 100 A.2d 869 (1953), Sellitto v. Cedar Grove, 133 N.J.L. 41, 42 A.2d 383 (Sup.Ct. 1945), Poling v. Roman, 86 N.J. Super. 484, 489, 207 A.2d 219 (Law Div. 1965).
In Cardell, Inc. v. Tp. of Woodbridge, 115 N.J. Super. 442, 280 A.2d 203 (App.Div. 1971), Woodbridge Township, despite its engineer's recommendation that the low bid of Cardell, Inc. be accepted, rejected all bids and ordered readvertisement of the public contract. Woodbridge offered no reason for the rejection. The Appellate Division affirmed the trial court's findings that Woodbridge Township had wrongfully rejected Cardell's bids and stated:
The unbridled power to reject bids, even where such right is served in the invitation for bidding, if allowed, would violate our public policy, contravene our Legislature's intention in enacting the competitive bidding statute and, in fact, afford a means by which "the statute can be evaded under color of the rejection *140 `of any and all bids'". Armitage v. Newark, 86 N.J.L. 5, 9 [90 A. 1035] (Sup.Ct. 1914). Even under the 1912 statute authorizing the rejection "of any and all bids" such action was wrongful. Armitage, supra. It is not less so today. Scatuorchio, supra, 14 N.J. at 91 [100 A.2d 869]; Cardell [v. Madison Tp.] supra, 105 N.J. Super., at [594] 601-602 [253 A.2d 820]; Poling, supra, 86 N.J. Super. at 488 [207 A.2d 219].
Id. 115 N.J. Super. at 450, 280 A.2d 203.
In expressing when a municipality may in good faith reject all bids the court stated:
Suffice it to say that when a municipal governing body concludes in good faith that the purposes of the public bidding statute are being violated, it may reject all bids submitted and in its discretion order a readvertising of the contract. Furthermore, should the lowest bid substantially exceed the municipality's cost estimate or its appropriation for the job, or should circumstances arise which might cause the municipal governing body to abandon or substantially revise the project, then a total rejection of bids might well be required.
Id. at 451, 280 A.2d 203.
In Gannett Outdoor v. Atlantic City, 249 N.J. Super. 217, 592 A.2d 276 (App.Div. 1991) Atlantic City properly advertised for bids for the placement of shelters at jitney stops in the city, reserving the right to reject all bids. Only two bids were received, one from Gannett and one from Sidewalk Shelters. When the city failed to take action on the bids within sixty days, the bids were considered rejected. The court in sustaining the rejection of all bids by the municipality held that although Atlantic City failed to set forth a specific reason for the rejection, the record sufficiently disclosed that with the disqualification of one of the two bidders there was a lack of competition and reasoned that a municipality should not be required to accept a bid if there is only one bid, or where it considers the price too high or decides that it may be unwise to proceed with the project.
Id. at 221, 592 A.2d 276.
In M.A. Stephen Construction Co. v. Bor. of Rumson, 117 N.J. Super. 431, 285 A.2d 55 (App.Div. 1971) the municipality advertised for bids on a proposed contract for sewer construction expressly reserving the right to reject all bids. After the bids were opened it was determined that the Stephen's bid was the lowest responsive bidder of six submitted and substantially lower than the cost estimate of the municipal consulting engineer. *141 Instead of accepting Stephens as the lowest responsive bidder the municipality without stating any reasons passed a resolution rejecting all bids. Stephens sought to compel the municipality to award the bid to it. The trial court granted summary judgment in favor of the municipality and dismissed the complaint. It was subsequently learned that the Stephens bid was not accepted because the municipal engineer furnished information to the municipality concerning Stephen's ability to perform. The Appellate Division reversed the trial court and stated that a municipality in rejecting all bids must offer a statement of reasons why a low bid is not accepted.
In Marvec Construction Corp. v. Twp. of Belleville, 254 N.J. Super. 282, 603 A.2d 184 (Law Div. 1992), Judge Villanueva held that under the circumstances of that case, a municipality which has reserved the right to reject all public bids may do so when the governing body believes that rebidding would probably bring a lower price. In Marvec the court first set aside an award given to the lowest bidder and determined that Marvec's bid was the lowest responsive bid submitted for the project. When the Township failed to take any action, Marvec applied to the court for an order ordering the Township to act on its bid. Subsequently, the Township adopted a resolution whereby it rejected all bids. In sustaining the rejection, Judge Villanueva found that there was good reason upon which the Township based its decision:
The Township Council followed the desires of the funding source, HUD, and considered all of the appropriate factors in rendering its decision to reject all bids. Those factors included the continued interest in the project by the Township, the continued interest in the project by the prospective bidders, the recommendations of the consulting engineer and Township Manager, the favorable economic climate for bidding of public improvement projects, a general decline in construction costs, the Township Manager's past experience with rebidding of projects, the change in the expediency with which the project needed to be completed and a minimum saving of approximately $15,000 between the lowest and next lowest bid. The Township weighed these factors in an appropriate fashion as directed by our courts and statutes.
Id. at 293-294, 603 A.2d 184.
In conclusion, Judge Villanueva determined that the rejection of the bids by Belleville was not arbitrary or capricious, rather *142 it was an exercise of the discretionary authority of the municipality and done in good faith.
Neptune is governed by a township committee form of government which consists of five committeemen, a township clerk and township administrator. The Township Committee votes among themselves for the appointment of a mayor. As a result of an election, the membership of the Township Committee changed on January 1, 1992. Two of the five Committeemen who took office on January 1, 1992 were newly elected and had no prior committee experience. As a result of this membership change, the Committee replaced the Mayor, Clerk, and Township Attorney. On January 9, 1992 when the bids were first opened, they were reviewed by the Township Committee, Administrator and Township Attorney that were in office for a period of only nine days and were immediately faced with the troublesome question of when they may exercise their power of rejecting all public bids. The Resolution adopted by Neptune and the rejection letters offered no statement or reason why all bids were rejected. For the first time at oral argument, the attorney for Neptune offered a reason for rejecting all bids by stating that it was related to today's economic climate and the burden that would be placed on the taxpayers if Neptune awarded the contract to Manzo, the next lowest bidder. At oral argument, Neptune conceded that this project was the Committee's first experience with opening public bids. After having determined that North Brunswick's bid was unacceptable, Neptune was then undecided what action to take because of their concern for future litigation. The Committee came to the conclusion that the safest course would be to reject all bids and readvertise for new bids on the project.
The court should not substitute its judgment for that of a governing body and should not attempt to exercise supervision over a municipal discretionary authority absent a showing of arbitrariness. George Harms Constr. Co. v. Bor. of Lincoln Pk., 161 N.J. Super. 367, 379, 391 A.2d 960 (Law Div. 1978).
*143 The only supportive information and reasons for the passage of the Resolution was furnished to the court by counsel. Counsel indicated that it was the Committee's indecision, fear of litigation, and the prevailing economic climate that led Neptune to reject all bids. These reasons stated for the first time in litigation contesting the validity of a resolution cannot cure a defect in a resolution rejecting all bids. While the action by Neptune may have been one in good faith, its rejection of all bids was arbitrary, capricious and an abuse of discretion. If such arbitrary action by a bidding authority is permitted, or if a defect in a resolution can be cured in litigation, our public bidding statute will be undermined. Competition will be discouraged resulting in fewer bidders and higher bids. The court finds that the Resolution rejecting all bids is fatally defective because it fails to set forth any supportive information or reason for its adoption. The Resolution to reject all bids is set aside. The court's order restraining Neptune from opening the new bids is made permanent and the case is remanded to the Neptune Township Committee to award the bid for the project to Manzo as the lowest responsive bidder.