286 N.J. Super. 298 (1996)
669 A.2d 254
BODIES BY LEMBO, INC., PLAINTIFF-APPELLANT,
v.
COUNTY OF MIDDLESEX AND THE NORCIA CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1995.
Decided January 4, 1996.
*301 Before Judges MICHELS, VILLANUEVA and KIMMELMAN.
Nord & Associates, attorneys for appellant (Vito C. DeMaio, of counsel and on the brief).
Bruce J. Kaplan, attorney for respondent County of Middlesex (Mr. Kaplan, on the letter brief).
Respondent The Norcia Corporation did not submit a brief.
The opinion of the court was delivered by VILLANUEVA, J.S.C.
Plaintiff Bodies by Lembo, Inc., appeals from an order requiring rebidding for road maintenance equipment by the County of Middlesex (County) after plaintiff was declared the lowest responsible bidder. We reverse and remand to have the trial court order that the contract be awarded to plaintiff.
On September 1, 1994, the Board of Chosen Freeholders of Middlesex County (Board) adopted a resolution authorizing the bidding for road maintenance equipment including, inter alia, eight dump bodies, each with snow plow and hydraulic system, to be installed on eight truck chassis owned by the County. Plaintiff submitted a bid in the total amount of $172,000. The bid of The Norcia Corporation (Norcia) for the same equipment was $177,688. Both of these bids conformed to the specifications set forth in the County's Notice to Bidders (Notice). In addition to its bid for the installation of a Biebeau MS1034 dump body with a Valk snow plow, Norcia submitted an alternate bid in the total amount of $169,152 for a purportedly "equivalent" product, i.e., a Chief Mark II dump body with Power-Trol hydraulic system and Valk snow plow, under section 13.0 of the bid specifications.
On November 30, 1994, Jack Garber, the County's purchasing agent, recommended that five of the seven items contained in the *302 Board's resolution be awarded to bidders. Included in that recommendation was the contract for the eight dump bodies for which plaintiff was designated as the "lowest responsible bidder."
On December 12, 1994, prior to any announcement of an award, Norcia sent a "letter of protest" to Jack Garber requesting a hearing in the event that its alternate bid was not accepted. A purported hearing took place on December 14, 1994, between the County and Norcia. That hearing apparently caused Norcia to make numerous changes to its alternate bid which either corrected or bettered the non-conformities. Thereafter, on January 19, 1995, the Board awarded the contract (Contract) to Norcia.
Plaintiff filed a verified complaint in lieu of prerogative writs, together with an order to show cause with temporary restraints, seeking to have the court, inter alia, rescind the Contract between the County and Norcia and award it to plaintiff. On March 3, 1995, the trial judge granted plaintiff's application for temporary restraints and set March 22, 1995, as the return date for the order to show cause. On March 22, the parties consented to the imposition of permanent restraints pending the outcome of the within litigation and agreed to a disposition of the matter by summary judgment.
After oral argument the judge found that the hearing requested by Norcia and held without notice to the other bidders, constituted a violation of Local Public Contracts Law, N.J.S.A. 40A:11-1 to -49, sufficient to invalidate the Contract. He concluded that the Contract was awarded to Norcia based on the modifications Norcia made to the alternate bid after the December 14 hearing. He found, further, that since the irregularities in Norcia's original alternate bid demonstrated a material departure from the bid specifications and prejudiced other bidders, the County could not waive the irregularities.
By order dated July 7, 1995, the judge granted plaintiff's motion for summary judgment, invalidated Norcia's alternate bid and rescinded the Contract. In addition, he ordered the County to *303 "advertise for new bids as soon as practicable." The judge made no mention of attorney's fees.
Plaintiff filed a motion for reconsideration, seeking to vacate that portion of the court's order requiring the County to readvertise for bids and to have the court reconsider its denial of plaintiff's request for attorney's fees. Plaintiff also sought an order excluding Norcia from submitting a bid in response to the County's rebid of the Contract, or, alternatively, a stay preventing the County from rebidding the Contract pending appeal. On September 29, 1995, the court entered an order which denied plaintiff's motion to vacate the order compelling the County to advertise for new bids, plaintiff's application for attorney's fees and costs, and plaintiff's application for a stay pending appeal.
In the meantime, on July 20, 1995, the Board rescinded the January 19, 1995, Contract with Norcia, revised its bid specifications, and passed a resolution authorizing public advertising for bids on the revised bid specifications.[1] According to the resolution, the revisions were made to "reflect changes on the basis of new technology, added safety, and availability of parts."
On August 9, 1995, plaintiff filed a notice of appeal with the Appellate Division, and, pursuant to R. 2:9-5, sought an order staying the County from opening the bids submitted to it pursuant to its readvertisement. We granted the stay on August 14, 1995. Plaintiff now appeals from that part of the trial court's order of July 7, 1995, which required the County to readvertise for bids.

I.
The purpose of the Local Public Contracts Law is to "`secure for the public the benefits of unfettered competition.'" *304 Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313, 650 A.2d 748 (quoting Terminal Constr. Corp. v. Atlantic County Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 (1975)). Accordingly, contracts must be awarded to the lowest bid conforming to the specifications. Township of Hillside v. Sternin, 25 N.J. 317, 324, 136 A.2d 265 (1957). Bid proposals, to be accepted, must not materially deviate from the specifications set forth by the contracting agency. Meadowbrook Carting Co., supra, 138 N.J. at 314, 650 A.2d 748. The rationale for this is obvious:
"The conditions and specifications must apply equally to all prospective bidders. Otherwise, there is no common standard of competition. Every element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or to disregard and thus to estimate his bid on a basis different from that afforded the other contenders. So it follows that all bids must comply with the terms imposed, and any material departure therefrom invalidates a nonconforming bid as well as any contract based upon it. If this were not the rule, the mandate for equality among bidders would be illusory and the advantages of competition would be lost."
[In re On-Line Games Contract, 279 N.J. Super. 566, 590, 653 A.2d 1145 (App.Div. 1995) (quoting Sternin, supra, 25 N.J. at 323 [136 A.2d 265]).]
In order to protect these important policies, a contracting entity "cannot be permitted to breathe validity into an invalid bid." Sternin, supra, 25 N.J. at 326, 136 A.2d 265. Similarly, where a rebid would effectuate just such a result, a court cannot order a rebidding, but must award the bid to the lowest bidder. Only in this way can the pitfalls of a public bidding system, i.e., "favoritism, improvidence, extravagance and corruption," be avoided. Terminal Constr. Corp., supra, 67 N.J. at 410, 341 A.2d 327.
The remedy the court ordered herein, i.e., rejection of all bids by virtue of the court's order to readvertise, is contrary to our "`long-standing judicial policy' in construing [public bidding] statutes `... to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines.'" 426 Bloomfield Ave. Corp. v. City of Newark, 262 N.J. Super. 384, 387, 621 A.2d 59 (App.Div. 1993) (quoting L. Pucillo, supra, 73 N.J. 349 at 356, 375 A.2d 602). See also Meadowbrook Carting Co., supra, *305 138 N.J. at 314, 650 A.2d 748 (stating that a contracting entity "generally is without discretion to accept a defective bid").
Although the County awarded the Contract to the lowest numerical bidder  Norcia's alternate bid was $169,152 while plaintiff's bid was $172,000  Norcia was not the "lowest responsible bidder."[2] The trial court determined that Norcia submitted a substantially deficient bid and properly invalidated it. Norcia has not appealed that determination.
The law is clear that "where a party does not materially respond to the bid specifications he cannot be classified as a bidder at all, since the specifications are mandatory and jurisdictional." George Harms Constr. Co. v. Borough of Lincoln Park, 161 N.J. Super. 367, 374, 391 A.2d 960 (Law Div. 1978). Recently, this court restated that proposition, finding that "a non-conforming bid is no bid at all." In re On-Line Games Contract, supra, 279 N.J. Super. at 595, 653 A.2d 1145. Further emphasizing the procedural constraints of the bidding process, this court observed that "[o]nce the lowest responsible bidder on a local public contract is identified, the bid must be awarded to that entity." Id. at 590, 653 A.2d 1145. Since plaintiff's bid conformed in every respect to the specifications required in the County's notice to bidders, plaintiff qualified as the lowest responsible bidder and the County should have awarded the Contract to plaintiff.
When the County failed to properly award the Contract to plaintiff, the trial court should have ordered the County to do so. Instead, the judge concluded that case law impliedly required that the County advertise for new bids, citing Meadowbrook Carting Co., supra, 138 N.J. 307, 650 A.2d 748, and L. Pucillo & Sons v. Mayor of New Milford, 73 N.J. 349, 375 A.2d 602 (1977).
*306 In Meadowbrook, supra, there were only two bidders, one of which failed to include a consent of surety or a Certificate of Insurance as required by the bid specifications. 138 N.J. at 311, 650 A.2d 748. The remaining bid was 18%  or $100,000  higher than the other bid. The Court stated: "Under the circumstances, we hold that all bids are to be rejected and the contract readvertised." Id. at 325, 650 A.2d 748 (emphasis added).
In L. Pucillo, supra, the Borough of New Milford solicited bids for garbage collection services for contracts of one, two, three and five years' duration. 73 N.J. at 351, 375 A.2d 602. Although Pacio Sanitation failed to supply figures for the five-year contract and did not include the requisite bid bond and consent of surety with its proposal, the borough awarded it the three-year contract for which it had submitted the lowest bid. Id. at 355, 375 A.2d 602. The Supreme Court held that Pacio Sanitation's bid represented a substantial departure from the bid specifications which could not be waived by the borough. It therefore invalidated the contract between Pacio Sanitation and the borough. Id. at 358-59, 375 A.2d 602.
Plaintiff L. Pucillo originally sought to have the contract awarded to itself as the lowest responsible bidder, but later suggested that the borough accept new bids for the balance of the three-year term. The Court, "in view of the substantial period of time which ha[d] elapsed since the submission of bids," elected to adopt L. Pucillo's suggestion. Id. at 359, 375 A.2d 602. However, the Court did not limit the borough to the solicitation of bids only for the balance of the contract, but stated that it could "solicit proposals for any term up to the statutory maximum of five years." Id.
In Meadowbrook and L. Pucillo the Court fashioned remedies both practical and appropriate to the respective circumstances. However, the Court's qualifying language when ordering a rebid in each of these cases suggests that there is no judicial mandate to rebid a contract whenever an awarded contract is invalidated. See also Gannett Outdoor Co. v. City of Atlantic City, 249 N.J. Super. *307 217, 221, 592 A.2d 276 (App.Div. 1991) (holding that a municipality may reject bids where only one bid is submitted, where the price is too great, or where the municipality decides to abandon the project); Marvec Constr. Corp. v. Township of Belleville, 254 N.J. Super. 282, 603 A.2d 184 (Law Div. 1992) (finding that a decision to rebid was appropriate where there was a $15,000 difference between the nonconforming bid and the lowest conforming bid); George Harms Constr. Co., supra, 161 N.J. Super. at 380-81, 391 A.2d 960 (ordering a rebid due to the "imminent circumstances" of the case, the difference of $200,000 between the relevant bids, and the "unreasonably short time" the borough would have in which to deliberate further).
A cogent rationale for allowing a contracting entity to rebid a project only when it acts in good faith and for very good reason is set forth in Marvec Constr. Corp., supra:
Rebidding a contract is fraught with certain dangers. While it is true that in some instances rebidding will benefit the public through achieving a lower price, the converse result of a higher contract price is also a factor to be considered. This is because the low bidder who may have given his best possible price may drop out of the bidding or other bidders by reason of insight gained through revelation of the competition's bidding strategy may see the weaknesses in their own bids. One cannot presume that rebidding will ipso facto bring a lower price. There is also the potential in some instances for rebidding to be demanded until the "favorite son" candidate is awarded the contract.
[254 N.J. Super. at 291 [603 A.2d 184.]
Despite the fact that serious irregularities between the County and Norcia marred the bidding process and there was no indication that a rebid would result in a lower bid, the judge devised a remedy which could cause plaintiff, although winning the battle, to lose the war.
A contracting agency under certain circumstances has the right to reject all bids. N.J.S.A. 40A:11-24. This right serves an important function in that it provides a "strong inducement" for bidders to submit as low a bid as possible. Cardell, Inc. v. Township of Woodbridge, 115 N.J. Super. 442, 450-51, 280 A.2d *308 203 (App.Div. 1971), certif. denied, 60 N.J. 236, 287 A.2d 733 (1972). However, that discretionary privilege is not without limit.
In Poling v. Roman, 86 N.J. Super. 484, 207 A.2d 219 (Law Div. 1965), the court held that "in order for a municipality to reject bids there must be evidence of such a character as would cause reasonable men to believe that it was not in the best interests of the municipality to award the contract to the lowest bidder." Id. at 489, 207 A.2d 219. We reiterated that principle in Cardell and, in dicta, specified several circumstances when a rejection of all bids would be a valid exercise of municipal discretion: where the contracting entity makes a good faith determination that the purposes of the public bidding statute have been violated; where the lowest bid "substantially" exceeds the cost estimate or appropriation for the project; or where the contracting entity forgoes or "substantially" revises the project. Cardell, Inc., supra, 115 N.J. Super. at 450-51, 280 A.2d 203. These examples of valid exercises of municipal discretion are not exhaustive. Marvec Constr. Corp., supra, 254 N.J. Super. at 289, 603 A.2d 184.
Here, the County asserts that, in complying with the court order to readvertise, it "had the opportunity to review its needs... [and] discovered 21 errors in the original bid specifications which it corrected." However, the County revised its bid specifications "not as a result of the defendant's decision to revise the project," but rather as a result of the trial court's order of July 7, 1995, requiring the County to rebid. Therefore, the rationale of Cardell does not apply.
In Ace-Manzo, Inc. v. Township of Neptune, 258 N.J. Super. 129, 609 A.2d 112 (Law Div. 1992), the court had an opportunity to address the issue of a municipality's right to reject all bids after it had determined that the proposal of lowest numerical bidder was nonconforming. Judge Milberg stated, "[t]he mere disqualification of a low bidder does not in itself give a municipality the right to reject all bids. To do so would undermine competitive bidding and discourage competition." Id. at 139, 609 A.2d 112.
*309 Although in Ace-Manzo there was a difference of over $38,000 between the nonconforming bid and the lowest conforming bid, when the court ascertained that Neptune's decision to readvertise was based in part on its fear of litigation over the bidding process and the "prevailing economic climate," the trial court ordered that the project be awarded to Manzo. Id. at 143, 609 A.2d 112. The court stated that, although Neptune may have been acting in good faith, "[i]f such arbitrary action by a bidding authority is permitted, or if a defect in a resolution can be cured in litigation, our public bidding statute will be undermined." Id.
In determining whether a contracting entity has exceeded its authority to reject all bids, courts apply the standard of arbitrary and capricious. Marvec Constr. Corp., supra, 254 N.J. Super. at 289, 603 A.2d 184. If the County had rejected all bids in this case, it would have been arbitrary and capricious because plaintiff's bid fully complied with the County's Notice, the County initially intended to award the Contract to plaintiff as the lowest responsible bidder, and the monetary difference between plaintiff's bid and Norcia's alternate bid was de minimis, i.e. $2,848, or only $356 per truck.
Moreover, once the bids "`have ... been opened and each bidder's competitive position has been exposed, rejection of all bids should only occur for cogent or compelling reasons.'" Id. at 288, 603 A.2d 184 (quoting Cushman & Doyle, Construction Bidding Law (1990) § 1.7 at p. 9). See also In re On-Line Games Contract, supra, 279 N.J. Super. at 590 n. 2, 653 A.2d 1145. Given that the County originally characterized Norcia's alternate bid as deviating from specifications only to a "minor" extent, the County cannot now reasonably state that its revised specifications were formulated for "cogent and compelling" reasons. Since the County itself could not have rejected all of the bids, the court should not have done so.
At the hearing on the motion for reconsideration, plaintiff argued to the trial court that a contracting agency should not be allowed to change the bid specifications once the trial has begun. *310 The judge concluded that he could not prevent the County from revising the specifications "if they decide[d] in good faith, that what they want to do now is different than what they originally wanted to do." Because this case must be remanded to the trial court to award the Contract to plaintiff, this issue is moot.

II.
Plaintiff contends that since the defendants' conduct violated the Local Public Contracts Law, plaintiff's law suit is analogous to a derivative action on behalf of the taxpayers, and the court's refusal to award attorney's fees will have a chilling effect on litigation where a public entity engages in misconduct, public policy dictates that plaintiff should have been awarded attorney's fees.
Attorney's fees are allowable, however, only when agreed to by contract or as expressly provided under R. 4:42-9, including where permitted by statute, R. 4:42-9(a)(8). Since neither the rules nor the Local Public Contracts Law provide for an award of attorney's fees and costs, the trial judge properly denied plaintiff's request.

III.
We reverse that part of the order of July 7, 1995, that ordered the County of Middlesex to advertise for new bids and remand this matter to the trial court for it to enter an order requiring the County of Middlesex to award the subject contract to plaintiff Bodies by Lembo, Inc.
NOTES
[1] Plaintiff complains that the "revised Detail Specifications require the furnishing of Henderson Chief Mark II dump bodies," which is equivalent to Norcia's alternate bid. Furthermore, plaintiff contends that Norcia is the sole and exclusive New Jersey distributor for Henderson Dump Bodies. Norcia disputes this claim, stating that it "understands that there is another Henderson dump body dealer in Bergen County and numerous distributors in the tri-state area."
[2] The term "responsible" refers to a bidder with the "experience, financial ability, moral integrity and the availability of facilities necessary to perform the contract." D. Stamato & Co. v. Township of Vernon, 131 N.J. Super. 151, 157, 329 A.2d 65 (App.Div. 1974).