PATERSON CONTRACTING COMPANY, APPELLANT, v. CITY OF HACKENSACK, THE HACKENSACK IMPROVEMENT COMMISSION AND G. DI NAPOLI & COMPANY, RESPONDENTS.

Submitted July 9, 1923—Decided November 19, 1923.

To justify the governing body of a municipality, governed under chapter 152 of the laws of 1917, in rejecting the bid of the lowest bidder for a public work, there must be such evidence of the irresponsibility of the lowest bidder adduced as would justify a belief on the part of fair-minded and reasonable men that it is not for the best interest of the municipality to award the contract to the lowest bidder.

On appeal from the Supreme Court.

For the appellant, *Randal B. Lewis.*

For the respondents, *Wendell J. Wright.*

The opinion of the court was delivered by

KATZENBACH, J. This is an appeal from an order of the Supreme Court dismissing a writ of *certiorari.*

The Hackensack Improvement Commission, the governing body of the city of Hackensack, advertised for proposals for the construction under one contract of certain sewers. The commission requested that proposals be submitted at a meeting to be held on October 16th, 1922. On that day, at the hour and place designated, bidders for the work submitted their proposals. The lowest bid was presented by the Paterson Contracting Company (hereafter referred to as the Company). The amount of its bid was $140,382.70. The next lowest bidder was G. Di Napoli & Company, whose bid was $141,579.75. On November 6th, 1922, the commission awarded the contract to G. Di Napoli & Company. Before this award was made the commission passed a resolution stating that in their judgment the Paterson Contracting Com-

pany was not a responsible bidder and had not demonstrated that it had sufficient experience in the character of work involved, sufficient capital or financial backing to properly finance the work, and proper office facilities, including quick means for communication, to properly execute the work, and for these reasons its bid should be rejected. It was true that the Company had not demonstrated its abilities in the matters referred to in the resolution; but the commission had never afforded it an opportunity to do so. The bid of the Company was rejected without a hearing.

The law governing the award of a contract of this character is found in section 1, article 11, of chapter 152, *Pamph. L.* 1917, *p.* 347, which reads as follows: "No municipality shall enter into any contract for the doing of any work or for the furnishing of any materials, supplies or labor, the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $500, unless the governing body shall first publicly advertise for bids therefor, and shall award the said contract for the doing of said work or the furnishing of such materials, supplies or labor to the lowest responsible bidder; provided, this section shall not prevent any municipality having any work done by its own employes."

The commission could not do as it did without according to the lowest bidder an opportunity to show its responsibility if challenged. *Kelly* v. *Freeholders,* 90 *N. J. L.* 411. After the award had been made the Company made application to a justice of the Supreme Court for a writ of *certiorari* to review the action of the commission. The writ was allowed and subsequently the case was argued before the same justice who had allowed the writ, sitting alone, pursuant to the statute. He decided that the award to G. Di Napoli & Company should be set aside because no hearing had been afforded the lowest bidder as to its responsibility. Thereupon the commission caused the Company to be notified that it would be given a hearing as to whether or not it was a responsible bidder in the following respects: (1) Experience in the performance of the character of work required; (2) necessary machinery; (3) financial ability; (4) facilities

necessary for the performance of the work, and (5) necessary equipment. On the day fixed for the hearing, January 22d, 1923, the Company appeared by counsel and assumed the burden of proving that it was a responsible bidder. Mr. Maggi, the president of the Company, testified that he had had for eight years experience in sewer work, acting as superintendent or assistant superintendent of sewer construction; that he had done trunk sewer work and deep sewer work; that he or his Company had constructed some twelve sewers for the city of Paterson. He presented a letter (admitted without objection), from the city engineer of Paterson to the effect that the work of the Company had been entirely satisfactory and that in his opinion the Company could handle any sewer work satisfactorily. He also presented a letter to the same effect from the county engineer of Passaic county. On the subject of the necessary machinery for the work, Mr. Maggi testified that his Company had all the necessary machinery except one machine (a Moore trench machine), which his Company had made arrangements to obtain. Correspondence corroborating this statement was produced. Evidence was offered which showed that the Maryland Casualty Company would give the surety bond to accompany the contract. Mr. Maggi further testified that the Company had between $15,000 and $16,000 in cash, and could raise within a week, if necessary, from its quick assets, between $20,000 and $30,000 additional. It was shown that telephone communication with the Company could be had and further telephone service was offered. Mr. Grassi, connected with the Company, testified that he had been engaged in sewer work of all kinds for fifteen years. The commission offered no evidence. Its engineer had been called as a witness for the Company and was cross-examined by counsel for the commission. The cross-examination showed no technical, practical or financial inability on the part of the Company to perform the contract.

Immediately after this hearing the commission passed a resolution, previously prepared, finding that the Company was not experienced in the work called for by the specifica-

tions; was not financially able to perform the contract; had not sufficient capital to properly finance the work; had not the proper facilities and the necessary machinery and equipment to perform the contract, and that by reason of these determinations the proposal of the Company be rejected on the ground that the Company was not the lowest responsible bidder. The resolution further awarded the contract to G. Di Napoli & Company, the lowest responsible bidder for said work, in the opinion of the commission.

The Company then applied to the same justice as had allowed the former a writ of *certiorari*. He allowed a rule to show cause why a writ of *certiorari* should not be allowed, returnable before the Supreme Court. The Supreme Court allowed the writ. The case was then argued before a single justice, sitting alone under the statute. He rendered a decision dismissing the writ. From the order entered dismissing the writ the Company has appealed.

The opinion below says that the commission might well have decided that the Company was responsible and awarded the contract to it; but that the judgment of the commission was a judgment to be given upon what they found to be the facts, and that he was unwilling to say that they exercised their judgment either corruptly, fraudulently or erroneously. We do not think that it is necessary to prove corruption or fraud on the part of the commission. The question for their determination was whether the appellant was so lacking in the experience, financial ability, machinery and facilities necessary to perform the contract as to justify a belief upon the part of fair-minded and reasonable men that it would be unable to perform its contract. The evidence shows that the company commanded the services of men who had had experience in sewer work. One had had eight years' experience; another fifteen years' experience in all kinds of sewer work. It had successfully constructed sewers for other municipalities and presented testimonials from their engineers that it could handle any sewer work. It had cash and quick assets of between $35,000 and $45,000, equivalent to about thirty per cent. of the amount of the contract. It is

true that its paid in capital stock was only $6,000; but the Company had greatly increased its available capital by its successful operations. The question was not what it had originally commenced business with, but what resources it could then command. It had all the machinery necessary except one machine, which it had arranged to obtain. The lack of one machine, which would be available when the work was to be executed, certainly does not justify the finding that the Company was an irresponsible bidder. It had telephone facilities. There was no contradiction of these facts established by the Company. The commission offered no testimony to refute them. The only inference which can be drawn from this is that it could not refute the facts presented by the Company. To bid upon a contract of this character requires considerable work on the part of the bidder in studying the specifications, making estimates of the amount of excavation to be done and materials required, obtaining bids for the materials, making tentative contracts to cover the materials and necessary labor, &c. These matters required the expenditure of money. To encourage contractors to submit bids for public improvements should be the aim of every community. Numerous bidders create competition. Competition lowers the cost. If bids are rejected arbitrarily or capriciously contractors will not take the time and expend the money necessary to submit proposals. They will infer favoritism. This will result in few bidders and higher bids. The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders. To reject the bid of the lowest bidder there must be such evidence of the irresponsibility of the bidder as would cause fair-minded and reasonable men to believe that it was not for the best interest of the municipality to award the contract to the lowest bidder. We can find no evidence in the record (a resume of which has been given) which in our opinion justified the determination of the commission that the Paterson Contracting Company was an irresponsible bidder. This leads to the reversal of the order dismissing the writ of *certiorari* and the entering of an

order when the record is remitted to the Supreme Court that the award of the contract to G. Di Napoli & Company be set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, TRENCHARD, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ. 10.