254 N.J. Super. 282 (1992)
603 A.2d 184
MARVEC CONSTRUCTION CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
TOWNSHIP OF BELLEVILLE, A BODY POLITIC OF THE STATE OF NEW JERSEY AND COUNTY OF ESSEX; AND T. RITACCO CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided January 6, 1992.
*283 Thomas S. Cosma for plaintiff (Connell, Foley & Geiser, attorneys)
Brian W. Mason for defendant Township of Belleville, (Lorber, Schneider, Nuzzi, Vichness & Bilinkas, attorneys; Vincent J. Nuzzi, of counsel)
Stephen W. Gruhin for defendant T. Ritacco Construction Co., Inc.
*284 VILLANUEVA, J.S.C.
The issue presented is whether, after the Court has declared the apparent low bid to be legally insufficient, a municipality which has reserved the right to reject all public bids may do so when the governing body believes that rebidding would probably bring a lower price.
The Court holds that under the circumstances of this case this reason is a legally sufficient basis for the Township to reject all bids.

THE PUBLIC BIDDING PROCESS HEREIN
Prior to August 21, 1991, defendant Township of Belleville ("Township") advertised for the receipt of public bids concerning a contract to be let for work on Belleville Avenue and Valley Street ("Project"), involving the reconstruction of approximately 800 linear feet of roadway, installation of drainage, water mains and related site work. The Notice to Bidder required that the bid proposal be on the standard form enclosed with the bid package, be enclosed in sealed envelopes bearing the name and address of the bidder and addressed to the Township, and that the proposal "must be accompanied by a Statement of Consent of Surety from a surety company authorized to do business in the State of New Jersey, acceptable to the Township and a bid guarantee to the Township for not less than ten percent (10%) of the amount bid except that the bid guarantee need not exceed $20,000." The requirement for a bid guarantee is repeated in the Information for Bidders, and the requirement for the Consent of Surety is repeated in the Information for Bidders.
All bidders who desired to bid submitted their bids prior to the time scheduled for opening, which was 11:00 a.m. on August 21. The Municipal Clerk proceeded to open the bids. When she opened the sixth bid, submitted by defendant T. Ritacco Construction Co., Inc. ("Ritacco"), it was discovered that the bid proposal did not have included therewith any form *285 of bid guarantee, be it a certified check in the amount of 10% of the bid (which equated to $17,279.50) nor a Bid Bond in any amount nor a Consent of Surety. The apparent low bid of Ritacco was $172,615. The apparent second low bid of $186,809 submitted by plaintiff Marvec Construction Corp. ("Marvec") was fully responsive and complete.
Within seconds after the Ritacco bid was opened, a woman stated: "I left the bid bond on my table, I'll be right back." A woman was then seen running out of the room. Approximately 20 minutes later, the woman returned and submitted the bid bond for Ritacco. She explained that she was Mrs. Ritacco and had inadvertently left the bid bond on her desk while she was putting the bid into the envelope which she submitted. She apologized for the delay and the bond was placed with the bid. Two additional bids, both of which were higher than the Ritacco and Marvec bids, were opened prior to her return.
Marvec notified the Township Attorney by two letters that Marvec believed that the Ritacco bid must be rejected as materially deviating from the Bid Specifications and from the applicable provisions of the Local Public Contract Law. The Township Attorney apparently disagreed because on September 10, the Township Council passed a Resolution awarding the contract to Ritacco, subject to the approval of the Essex County Community Development Block Grant Program.
Since the Township believed that the delay in supplying the bond in no way jeopardized the integrity of the public bidding process, the Township awarded the contract to Ritacco.

FIRST ORDER TO SHOW CAUSE
Marvec filed this complaint in lieu of prerogative writs to restrain the Township from awarding the contract to Ritacco and for a declaratory judgment that said bid was null and void and of no effect. Marvec also sought to be declared the lowest responsive and responsible bidder on the Project and to be entitled to the award of the contract and damages.
*286 Upon return of the first Order to Show Cause on October 3, the Court concluded that the failure to include the bid bond was a material deviation in the bid and, therefore, nonwaivable. Pucillo & Sons v. Belleville Tp., 249 N.J. Super. 536, 545, 592 A.2d 1216 (App.Div. 1991); Pucillo v. Mayor and Council of the Borough of New Milford, 73 N.J. 349, 356, 375 A.2d 602 (1977); George Harms Construction Co. v. Boro of Lincoln Park, 161 N.J. Super. 367, 391 A.2d 960 (Law Div. 1978).
The Court set aside the award to Ritacco as being null, void and of no effect and enjoined the effectuating of the award of the contract to Ritacco and enjoined Ritacco from undertaking any work with respect to the subject award. The Court also declared Marvec's bid to be the lowest responsive bid submitted with respect to the Project.

SECOND ORDER TO SHOW CAUSE
When the Township failed to take any action to determine whether Marvec was a responsible bidder or to reject all the bids, Marvec obtained another order to show cause to restrain the Township from "readvertising for bids, receiving bids or otherwise implementing or effectuating the rejection of all bids for the subject Project" returnable November 8. Marvec's responsibility as a bidder has never been questioned.
On the return date the Court ordered the Township to act on the Marvec bid by October 17, i.e., within 60 days of the opening of the bids on August 21, as required by law and the bid specifications. Otherwise Marvec could not have recovered monetary damages. M.A. Stephen Construction Co. v. Bor. of Rumson, 118 N.J. Super. 523, 288 A. 873 (Law Div. 1972), aff'd, 125 N.J. Super. 67, 308 A.2d 380 (App.Div. 1973).
On October 15 the Township Council adopted the following resolution by a four to two vote:
WHEREAS, by resolution dated September 10, 1991, the Township of Belleville awarded the bid for the reconstruction of portions of Belleville Avenue and Valley Street to T. Ritacco Construction Company, Inc. of Belleville, N.J., a bid *287 subsequently voided by order of Essex County Judge Charles Villanueva as a result of legal action brought by the second low bidder, Marvec Construction Company of Verona, N.J.; now therefore
Be It Resolved by the Township Council of Belleville that the resolution of bid award to T. Ritacco Construction Company Inc. dated September 10, 1991 is hereby rescinded, bids taken August 21, 1991 on the Reconstruction of Belleville Avenue and Valley Street are hereby rejected, the Township Manager is instructed to immediately proceed to rebid the project, and the Township Attorney is instructed to inform Judge Villanueva and each of the original bidders of this action.
Although the Township Council's Resolution fails to disclose any rationale for its decision, other than the commencement of this lawsuit by Marvec and the determination by the Court that the Township Council should not have awarded the contract of Ritacco as a result of the material defect in its bid proposal, Marvec accurately predicated that the only implied argument that could be made to sustain the rejection was that the Township Council does not wish to award a contract to Marvec for $14,000 greater than it would have had to pay to Ritacco.
Bertrand N. Kendall, the Township Manager, is familiar with public projects, the public bidding process, municipal budgeting, and political ramifications of same for elected officials. He recommended to the Township Council that they reject all bids and readvertise because:
1. There is less urgency for work to begin on the subject project.
2. His past experience in municipal government.
3. The current economic trend, that the construction industry is severely depressed and contractors are "hungry" for work, and economic forecasts that costs will continue to decrease. Therefore, he anticipated that re-bidding of the project will result in bids lower than those previously submitted.
4. The legally deficient bid was approximately $15,000 (actually $14,194) lower than Marvec, the next lowest bidder.
5. The Township is suffering from a declining tax base.
6. Rejection of all bids was merely a matter of economic considerations in an effort to save money on the project.
7. The present project is a HUD funded project which requires a full explanation why the lowest bid is not accepted. By past practice, HUD would prefer a town to re-bid where there has been bid irregularity and there is a prospect for a lower bid.
The Township Manager also stated that the Township now wants to add two parking lots to the specifications, but his *288 recommendation to reject all bids was not based upon an anticipated change in the specifications.
Marvec now seeks to set aside the resolution rejecting all bids on the grounds that it was done arbitrarily and capriciously and taken for a legally insufficient reason: economics.

ECONOMIC CONSIDERATIONS ARE A VALID REASON FOR THE REJECTION OF ALL BIDS
The function of this Court is to preserve the integrity of the competitive bidding process and to prevent the misapplication of public funds. Although an awarding authority has considerable discretion to reject all bids, it is also true that "if the bids have already been opened and each bidder's competitive position has been exposed, rejection of all bids should only occur for cogent or compelling reasons." Cushman & Doyle, Construction Bidding Law (1990) § 1.7 at p. 9. If the authority does not reject all bids for cogent or compelling reasons, then the Court must determine whether the rejection was arbitrary or capricious.
The issue herein is whether the judgment of the Township Manager, after this Court's rejection of the apparent low bid with a $15,000 price differential, that a rebid would likely result in lower prices constitutes an arbitrary and capricious reason for the rejection of all bids.
To hope to obtain lower bids on a rebid in this case is not so speculative that it constitutes arbitrary and capricious conduct.
The discretion of a contracting agency under the Local Public Contracts Law and other bidding statutes to reject all bids is not unfettered. The decision to rebid must not be arbitrary or capricious and it must be free from fraud, collusion and bad faith. Two of the most common reasons why a contracting agency will reject all bids and rebid a contract are that the low bid exceeds the budget for the work or that there *289 were ambiguities in the bid specifications. Neither applies to this case.
The power of a municipality to reject all bids was discussed in Cardell, Inc. v. Tp. of Woodbridge, 115 N.J. Super. 442, 280 A.2d 203 (App.Div. 1971), certif. den., 60 N.J. 236, 287 A.2d 733 (1972), where the Court stated:
In every instance in which the question of the power to reject bids has arisen, our courts have assiduously avoided deciding this `troublesome problem.' * * * They have, however, intimated the existence of that power. Id. 115 N.J. Super. at 449, 280 A.2d 203.
The Court acknowledged a municipality's power to reject all bids in limited kinds of circumstances, citing Annotation, "Right of public authorities to reject all bids for public work or contract," 31 A.L.R.2d 469 (1953). It also indicated the standard of review warranting judicial intervention as arbitrary and capricious. Id. at 449-450. In dicta, the Court gave illustrative examples of valid exercises of municipal discretion. Id. at 451. These examples included where "purposes of the bidding statute are being violated"; where "the lowest bid substantially exceeds the municipality's cost estimate or its appropriation for the job"; or where "circumstances arise which might cause the municipal governing body to abandon or substantially revise the project." Ibid. As there are other examples which the Court did not address, the list cannot be characterized as exhaustive.
The statutory authority for receipt and acceptance of bids by a municipality or county is N.J.S.A. 40A:11-24:
a. The contracting unit shall award the contract or reject all bids within such time as may be specified in the invitation to bid, but in no case more than 60 days, * * *
This statute permits the Township to reject all bids. The invitation to bidders also reserved that right which has been judicially recognized. Princeton Disposal Service, Inc. v. North Brunswick Tp., 154 N.J. Super. 488, 381 A.2d 1220 (App.Div. 1977), certif. den. 75 N.J. 608, 384 A.2d 838 (1978). Consistent with this statutory directive, Specification Paragraph I-B 7.3 provides that "the Contract shall be awarded or *290 all bids therefor rejected within sixty (60) days after the opening of bids ..." Specification Paragraph I-B 12.2 states "the right is reserved to reject any and all Proposals presented, if the OWNER and the OWNER alone, deems it in his best interest to do so."
Marvec argues that this right is limited to a rejection in good faith and that the Township Council did not act in good faith.
Marvec challenges the Township's exercise of its power to reject all bids by alleging that the Township's conduct was arbitrary and capricious because the examples cited in dicta in Cardell do not exist in the present case. The Township concedes that the subject Resolution is not artfully drawn, but the rationale for the actions of the Township are clearly set forth in the certification of Township Manager Bertrand Kendall. Admittedly the reasons for the Township's rejection of all bids do not include the examples cited in Cardell. However Cardell cannot be given such a restrictive reading as Marvec argues.
Marvec contends that to permit rebidding in the hope of getting a lower price would give excessive discretion to such contracting authority, relying upon a statement by Judge Morgan: "Unlimited discretion permits a waiver (sic) on purely personal grounds and in response to corrupt overtures. It is precisely this kind of opportunity that our bidding system was designed to avoid." In re Award of the Contract for the Construction of Bayonne Park, 168 N.J. Super. 33, 44, 401 A.2d 705 (App.Div. 1979).
Marvec also contends that the Ritacco bid should have been disregarded in considering potential prices upon a re-bid because that bid was declared null and void and that a contract authorized under the Local Public Contracts Law may not predicate the rejection of all bids upon the hope, expectation, speculation or prognostication that a re-bid will yield lower prices. It contends further that if the prices submitted on the *291 first round are within the engineer's estimate[1], all bids can not be rejected on the basis that a re-bid should produce lower prices, because to do otherwise would undermine the principles sought to be protected by the competitive bidding statutes.
Rebidding a contract is fraught with certain dangers. While it is true that in some instances rebidding will benefit the public through achieving a lower price, the converse result of a higher contract price is also a factor to be considered. This is because the low bidder who may have given his best possible price may drop out of the bidding or other bidders by reason of insight gained through revelation of the competition's bidding strategy may see the weaknesses in their own bids. One cannot presume that rebidding will ipso facto bring a lower price. There is also the potential in some instances for rebidding to be demanded until the "favorite son" candidate is awarded the contract. There is no evidence that this is what happened in this case. That potential is, however, an inherent evil which formed the basis for the limitation on the right to reject all bids stated in Cardell, Inc. v. Twp. of Woodbridge, supra, [where it quoted from the case of Paterson Contracting Co. v. Hackensack, 99 N.J.L. 260-264, 122 A. 741 (E. & A. 1923)]:
* * * To encourage contractors to submit bids for public improvements should be the aim of every community. Numerous bidders create competition. Competition lowers the cost. If bids are rejected arbitrarily or capriciously, contractors will not take the time and expend the money necessary to submit proposals. They will infer favoritism. This will result in few bidders and higher bids. The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders. [Id. 115 N.J. Super. at 450, 280 A.2d 203].
The purpose of all public contract bidding law is the protection of the public. As was stated in M.A. Stephen Construction *292 Co. v. Bor. of Rumson, 117 N.J. Super. 431, 436, 285 A.2d 55 (App.Div. 1971):
It is generally recognized that solicitation through public advertising of competitive bidding is a stable principle of public policy, 10 McQuillin, Municipal Corporations (3d ed. 1966 revision), § 29.29, and as observed in Hillside Tp. v. Sternin, 25 N.J. 317 [136 A.2d 265] (1957):
* * * The purpose is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good; and they should be rigidly adhered to by the courts. [at 322; citations omitted]
The Township's actions can only be overturned if shown to be arbitrary, capricious or an abuse of discretion. City of Newark v. Nat'l. Resource Council and Dept. of Environmental Protection, 82 N.J. 530, 414 A.2d 1304 (1980), cert. den. 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980); Henry v. Rahway Prison, 81 N.J. 571, 410 A.2d 686 (1980); Campbell v. Dept. of Civil Service, 39 N.J. 556, 562, 189 A.2d 712 (1963).
Even though there was no impropriety in the Marvec bid, a difference in price between the legally insufficient bid and the lowest responsive bid, together with the other economic concerns, constitutes good cause to reject all bids under the circumstances presented here. This is so without evidence that Marvec's bid was higher than the Township Engineer's cost estimate.
The public bidding statute was not meant to cost public bodies many thousands of dollars by requiring acceptance of higher bids for mere technical violations. Schlumberger Industries, Inc. v. Borough of Avalon, 252 N.J. Super. 202, 212, 599 A.2d 589 (App.Div. 1991).
The present case is a good example of a situation where the rejection of all bids is justified and valid. It is similar to the procedural situation in George Harms Constructions Co. v. Borough of Lincoln Park, 161 N.J. Super. 367, 391 A.2d 960 (Law Div. 1978), where the Borough of Lincoln Park awarded a sewerage project contract to the low bidder who had, in an untimely fashion, submitted a list of stockholders as required *293 by N.J.S.A. 52:25-24.2. The bid award was invalidated by the Court because the bid defect was deemed to be material and non-waivable. Id. at 378, 391 A.2d 960. However, instead of awarding the bid to the next lowest bidder, the Court acknowledged its limited ability to interfere with local governmental decisions and allowed the Borough to retain and exercise its statutory option to reject all bids. Id. at 379, 391 A.2d 960. Due to the imminent circumstances of that particular case, the Court itself directed re-bidding. Id. at 380, 391 A.2d 960. In doing so, the Court indicated that "in less imminent circumstances, the decision of whether to accept Harms bid or reject all bids could be made by the borough after evaluating various factors, e.g., anticipated rise (or fall) in labor and material costs to bidders at time of re-bid, amount of time needed to allow for resolicitation of bids, continued interest in the project by potential bidders, etc." Id. at 380, 391 A.2d 960.
Since July 1, 1990, the Township of Belleville has been governed by the council/manager form of government. Under this form of government, a full-time township manager, appointed by the Township Council, serves as the chief executive officer of the Township. At the helm of the Township government in Belleville is Bertrand Kendall, a qualified municipal manager. The Township Council acted upon the advice and recommendations of its Manager, as the Legislature intended by creating this form of government. The rejection of all bids was done after careful consideration. This is especially so in the face of the aspersions of bad faith and/or collusion case by Marvec. Despite Marvec's unsubstantiated claims, no contractor enjoys a "favorite son" status in Belleville. Merely because Ritacco has its office in Belleville does not indicate that the Township grants favoritism to it. There is no evidence that the Township has any interest in the identity of the party which eventually performs the contract.
The Township Council followed the desires of the funding source, HUD, and considered all of the appropriate factors in rendering its decision to reject all bids. Those factors included *294 the continued interest in the project by the Township, the continued interest in the project by the prospective bidders, the recommendations of the consulting engineer and Township Manager, the favorable economic climate for bidding of public improvement projects, a general decline in construction costs, the Township Manager's past experience with re-bidding of projects, the change in the expediency with which the project needed to be completed and a minimum savings of approximately $15,000 between the lowest and next lowest bid. The Township weighed these factors in an appropriate fashion as directed by our courts and statutes.
Based upon the information before it, the Council came to a majority consensus that it was in the public's best interest to re-bid the project. "The Court should not substitute its judgment for that of the governing body" and "should not attempt to exercise supervision over municipal discretionary authority absent a showing of arbitrariness". Id. at 379-380, 391 A.2d 960. In the present case, plaintiff has failed to show that the rejection of bids was in anyway arbitrary. The Council had a legally sustainable basis to decline to award the contract to Marvec, when it reasonably believed that a rebid would bring a lower price.
The rejection of all bids was not arbitrary or capricious; rather it was an exercise of the discretionary authority of the Council, done in good faith.
The court denies Marvec's application to set aside the rejection of all bids and to require the award of the contract to it.
Judgment for defendant Township of Belleville without costs.
NOTES
[1] Since the Township Manager never mentioned whether Marvec's bid exceeded the Township Engineer's cost estimate, the court assumes that it did not. However, the court likewise assumes that the Township does not want to disclose the estimate for fear that it could and probably would affect the rebids.