967 A.2d 350 (2009)
406 N.J. Super. 213
In The Matter of JASPER SEATING COMPANY, INC.'s Request for Reconsideration Regarding Request for Proposal No.: 07-X-37695.
DOCKET NO. A-4636-07T2.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 2009.
Decided April 2, 2009.
*352 Maeve E. Cannon, Princeton, argued the cause for appellant Jasper Seating Company (Hill Wallack LLP, attorneys; Ms. Cannon, of counsel and on the brief; Patrick D. Kennedy, of counsel and on the brief; Megan McGeehin Schwartz, on the brief).
Beth L. Mitchell, Deputy Attorney General, argued the cause for respondent Department of the Treasury, Division of Purchase and Property (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; David A. Balaban, Deputy Attorney General, on the brief).
Before Judges CARCHMAN, R.B. COLEMAN and SABATINO.
The opinion of the court was delivered by
R.B. COLEMAN, J.A.D.
Plaintiff Jasper Seating Company (Jasper) appeals from the Final Agency Determination of the Division of Purchase and Property (Division) to reject Jasper's bid as non-conforming for the State's purchase awards under its publicly-bid contract for furniture. We affirm the Division's determination.
The Division issued a Request For Proposals (RFP) on August 2, 2006, bid solicitation No. 07-X-37695, for non-modular office furniture. The solicitation was being offered for multiple State contract awards with the intent to make one statewide award for each brand of furniture listed in the RFP. An award of this type is significant as the contract award would not only cover the initial procurement of a particular brand of furniture but also all re-orders from the State and all of its using agencies and cooperative partners for a period of eighteen months. Due to the exclusivity and length of the contract, the RFP required pricing in the submitted bids to be firm for eighteen months.
The most relevant terms in the RFP which applied to all bidders are as follows. Section 6.1.5 mandates: "Responsiveness of the bidder with respect to the published price list(s) submitted. They should be adequate for the evaluators to analyze the bid proposal." Section 1.4.1 provides: "It is the sole responsibility of the bidder to be knowledgeable of all addenda related to this procurement." Section 1.4.2 provides: "The bidder assumes sole responsibility for the complete effort required in submitting a bid proposal in response to this RFP. No special consideration will be given after bid proposals are opened because of a bidder's failure to be knowledgeable as to all of the requirements of this RFP." Section 5.1 provides: "In the event of a conflict between the provisions of this RFP ... the Addendum shall govern."
During the question and answer period prior to bid submittal, twice bidders asked questions regarding submissions that included catalogs with price escalation stickers on the cover. The addenda and RFP compliance questions asked by bidders regarding *353 sticker increases and the answers thereto include the following:
RFP § 3.20.2 Price List Update
Question: If a manufacturer does not have a new published price list at the 18 month price update will a "sticker" price label be acceptable?
Answer: No. There will be no adjustments to originally submitted discounts. Only the most updated manufacturer's preprinted price lists will be acceptable.
RFP § 4.4.7.4 Mfr's Price List and Descriptive Literature
Question: Our current price list has a date of February 2005 but we have a sticker on the front of our price list stating that there is a 6% upcharge effective January 3, 2006. Will our price list with the 6% upcharge that became effective January 3, 2006 be accepted as our current price list?
Answer: The price list submitted must not contain any sticker increases, upcharges etc. The discount being bid will be taken directly from the price list submitted without any additional calculation. The bidder should adjust its bid accordingly.
[emphasis added.]
Both answers state unequivocally that sticker increases and sticker price labels are not acceptable. The answers to the questions went further to clarify that only the most updated manufacturer's preprinted price lists would be acceptable.
Bids were due on September 22, 2006, and later extended to November 2, 2006. In all, fifty-six bidders responded to the Division's request for proposals. Jasper submitted bids on behalf of two of its furniture divisions on September 20, 2006. Along with its bids, Jasper included its pre-printed list price catalogs, normally used for its commercial customers, which had stickers on the covers indicating that prices would increase by four percent, effective January 2007. Three other bidders, Dauphine North America, Paoli Inc., and Stylex also submitted bids with price increase stickers affixed to the catalogs. On September 14, 2007, the Division issued its Notices of Intent to Award. The bids submitted by the four bidders, which had price increase stickers on the vendor's preprinted catalog, were rejected as non-conforming. However, one of the multiple bids submitted by Dauphine did not contain a price escalation sticker, and Dauphine was awarded a contract on that one conforming bid.
Jasper protested by letter dated September 18, 2007 and requested reconsideration of its bid proposal. Jasper stated that its bids were for 2006 prices and in spite of the sticker, no increase was to apply. It re-submitted price lists with stickers crossed out, but that re-submission was not accepted because the bids had already been opened.
On November 1, 2007, the Division issued a Final Agency Determination formalizing its rejection of Jasper's bids as non-conforming. In her decision, the Acting Director of the Division recited the principles governing public contract deviations first articulated in River Vale v. R.J. Constr. Co., 127 N.J.Super. 207, 316 A.2d 737 (Law Div.1974), adopted by our Supreme Court in Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 650 A.2d 748 (1994), and applied by this court in In re Protest of the Award of On-Line Games Production and Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J.Super. 566, 597, 653 A.2d 1145 (App.Div.1995).
In River Vale, Judge Pressler declared that once a deviation has been identified, the issue is "`whether a specific non-compliance constitutes a substantial [material] and hence non-waivable irregularity.'" *354 On-Line Games, supra, 279 N.J.Super. at 594-95, 653 A.2d 1145 (quoting 127 N.J.Super. at 216, 316 A.2d 737). The materiality test to be applied to this issue is as follows:
[F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
[Ibid.]
In her application of the standard from our governing case law, the Acting Director determined that the sticker price increases submitted with Jasper's bids constituted a non-waivable, material deviation from the RFP and controlling addendum which required the Division to reject the bid in its entirety.
An email exchange took place between Jasper's Contract Administrator and the Acting Director, November 5 and 15, respectively, whereby the Acting Director reiterated the reasons for the Final Agency Determination. On November 19, 2007, Jasper filed a further protest in another effort to reverse the Final Agency Determination. In that communication, Jasper requested that minor elements of non-compliance with bid specifications be waived. In support of that result, Jasper cited RFP § 1.5, which provides:
The bidder's signature guarantees that prices set forth within the manufacturer's preprinted price lists and/or catalogs will govern for the period of the contract as specified herein. The bidder also acknowledges that, notwithstanding any reference to price escalation clauses, FOB shipping point, and shipping charges contained in the preprinted price lists, catalogs, and/or literature, such references will not be part of any State contract awarded as a result of this RFP.
On February 29, 2008, attorneys representing Jasper filed a letter with the Acting Director requesting the Final Agency Determination be overturned. That letter asserted Jasper's belief "that inclusion of the stickers was a non-issue because the sticker would be ignored in accordance with the terms and conditions of the RFP." The Acting Director responded in writing on April 25, 2008, and concluded that Jasper had not presented any facts, information or arguments sufficient to cause the Acting Director to set aside her Final Agency Determination. Nevertheless, the Acting Director elaborated on her prior determination as follows:
With respect to your reference to RFP Section 1.5 as a basis to seek relief on behalf of Jasper, this provision of the RFP was intended to acknowledge that preprinted catalogs and price lists used by manufacturers and associated distributors/dealers may included [sic] preprinted text setting forth terms and conditions applicable to the marketplace as a whole but which may conflict with certain of the State's standard terms and conditions. To the extent at [sic] the RFP did not contemplate that bidders would prepare special catalogs/price lists as a basis to submit a bid proposal, Section 1.5 provided that in the event such preprinted conditions may conflict with the RFP, the language of the RFP will prevail.
With respect to Jasper's bid proposal and similarly submitted bid proposals as well, the post-publication placement of a sticker on the preprinted catalog/price list denoting a markup of the list prices *355 disclosed therein is not considered part of the preprinted text otherwise addressed in RFP Section 1.5. Thus, your reliance upon this clause of the RFP as a basis to seek relief on behalf of Jasper is inappropriate.
On May 28, 2008, Jasper through a different law firm, filed another request for reconsideration and a reversal of the Agency's decision, or in the alternative, an immediate statewide re-bid. In connection with that request, Jasper's Contract Administrator submitted a certification in which she expressed her belief that the RFP meant "that the sticker would be disregarded and [Jasper's] preprinted price list would be the prices [Jasper] was offering to the State of New Jersey." By letter dated June 2, 2008, the Acting Director again responded in writing, reiterating that she found no basis to alter or vacate the Final Agency Determination of November 1, 2007. She reminded Jasper that the recourse available to a bidder disagreeing with a Final Agency Determination is with the Appellate Division. Jasper filed its notice of appeal that same day. On June 12, 2008, Jasper filed a motion for acceleration which we denied in an order dated June 30, 2008.

I.
Jasper contends that it was in full compliance with the terms of the RFP, and the Acting Director's determination that Jasper's bids were non-conforming was arbitrary and capricious. The Division counters that plaintiff materially deviated from the requirements in the RFP and failed to stay informed of the addenda related to conforming submissions.
The primary purpose of the bidding statutes are to benefit the taxpayers and they "are construed as nearly as possible with sole reference to the public good." Terminal Constr. Corp. v. Atl. County Sewerage Auth., 67 N.J. 403, 409, 341 A.2d 327 (1975). "Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Id. at 410, 341 A.2d 327. The statute governing the specifications, invitations, and award of public contracts, N.J.S.A. 52:34-12, provides that an award of a public contract: "shall be made with reasonable promptness ... by written notice to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." State v. Ernst & Young, L.L.P., 386 N.J.Super. 600, 618-19, 902 A.2d 338 (App.Div.2006) (quoting N.J.S.A. 52:34-12(g)).
"Any or all bids may be rejected when the State Treasurer or the Director of the Division of Purchase and Property determines that it is in the public interest so to do." N.J.S.A. 52:34-12(a). Our jurisprudence recognizes that the Legislature purposefully conferred broad discretion on the Director of the Division of Purchase and Property to determine "which bid will be most advantageous to the State." Commercial Cleaning Corp. v. Sullivan, 47 N.J. 539, 548, 222 A.2d 4 (1966). It is also well established that "the grant of broad latitude and discretion to the [Director] under the State bidding laws necessarily serves to limit the scope of judicial review when a decision of the [Director] is challenged on appeal." Id. at 549, 222 A.2d 4. Generally, courts will not interfere with a Final Agency Determination which pertains to contract awards or rejecting a bid or bidders unless there is a finding of "bad faith, corruption, fraud or gross abuse of discretion." Ibid.
However, the Director's determinations "as to responsibility of the bidder and bid conformity are to be tested by *356 the ordinary standards governing administrative action." On-Line Games, supra, 279 N.J.Super. at 593, 653 A.2d 1145. Even under this elevated scrutiny, "judicial capacity to review administrative actions is severely limited" in light of the executive function of administrative agencies. George Harms Constr. Co. v. Turnpike Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994); see also Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n, 93 N.J. 384, 390, 461 A.2d 575 (1983). In reviewing a determination on bid conformity, the judicial role comprises four inquiries:
(1) whether the agency's decision offends the State or Federal Constitution;
(2) whether the agency's action violates express or implied legislative policies;
(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and
(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Harms, supra, 137 N.J. at 27, 644 A.2d 76 (internal citations omitted).]
In reviewing whether an agency's determination "as to bid conformity is congruent with the legislative policies underlying our public bidding laws ... [t]he preliminary inquiry is whether the bid deviates from the RFP." On-Line Games, supra, 279 N.J.Super. at 594, 653 A.2d 1145. Where no deviation exists, the bid will be deemed conforming. Ibid. Where a deviation is found to exist, then it must be determined whether the deviation is material or immaterial, and only the latter may be waived. Ibid. Frequently, certain requirements incorporated into an RFP may by waived without chance of frustrating the policies in our bidding statutes. Ibid. On the other hand,
advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions [which] may not under any circumstances be waived.
[Ibid. (quoting Atl. County Sewerage Authority, supra, 67 N.J. at 412, 341 A.2d 327).]
Where the deviation from the RFP is found to be substantial under the River Vale standard, it may not be waived and the inquiry is over because a "non-conforming bid is no bid at all." On-Line Games, supra, 279 N.J.Super. at 595, 653 A.2d 1145 (citing River Vale, supra, 127 N.J.Super. at 222, 316 A.2d 737). If the deviation is found to be immaterial under this standard, and therefore waivable, "the next step is the specific decision to grant or deny waiver which is then subject to [our] review under the ordinary abuse of discretion standard." Ibid.
In On-Line Games, the State issued an RFP for new lottery equipment. There, one of the losing bidders challenged the alleged non-conforming bid submitted by the winning bidder. The RFP required a display unit to be included in the bids which the winning bidder had failed to include. We held the subject bid's non-conformity was unresponsive to a key requirement of the RFP which constituted a material deviation and was, thus, non-waivable. Furthermore, we determined the deviation could not be remedied by clarification once the bids were opened. In doing so, we explained that when "clarifying or elaborating on a proposal, a bidder explains or amplifies what is already there. *357 In supplementing, changing or correcting a proposal, the bidder alters what is there." Id. at 598, 653 A.2d 1145. Allowing alteration of the original proposal, post-opening, contradicts our public bidding scheme and undermines the integrity of the bidding process. See, e.g., id. at 598-603, 653 A.2d 1145.
In the instant case, the RFP contained two express and material provisions regarding pricing. Addendum No. 1 amended Section 3.20.2 as follows: "[T]he price list submitted must remain firm for the first 18 months of the contract." Addendum No. 2 amended section 4.4.7.4 as follows: "[T]he price list submitted must not contain any sticker increases." Interpreting this language by its plain meaning, the Division explicitly informed bidders that there must be no ambiguity in bids concerning pricing for the life of the contract. Hence, price lists submitted could contain no sticker increases. We do not read the final two sentences of RFP Section 4.4.7.4 as creating an exception to the clear prohibition of price stickers. Jasper and three similarly situated bidders submitted bids with price increase stickers on the cover of their preprinted price list catalogs. By so doing, their bids contained two alternative interpretations as to the pricing and contract terms being offered. For this reason, the Acting Director could not waive the deviation from the terms of the RFP and controlling addenda, and their bids were properly rejected as non-conforming.
Uniformity can be a determinative factor when reviewing the treatment of non-conforming bids. See, e.g., On-Line Games, supra, 279 N.J.Super. at 606, 653 A.2d 1145 (noting the disparity in granting one bidder the opportunity to clarify its bid post-opening and not another). Here, fifty-two of the fifty-six bidders, or approximately ninety-three percent, understood the provisions of the RFP and submitted bids in full compliance with its terms. Each of the bids submitted by the four contractors, those which contained the prohibited price increase stickers, were rejected in their entirety. As a further example of uniform treatment, the one bid submitted by Dauphine which did not contain a price escalation sticker resulted in the award of a contract.
Plaintiff contends additionally that RFP Section 4.4.7.4 which pertains to the Division's evaluation of bid proposals would also prevent the State from patently rejecting plaintiff's bids containing escalation stickers. Section 4.4.7.4 provides:
The State reserves the right to obtain from the manufacturer, the price list to be used for bid evaluation. Should this occur, the bidder will be afforded the opportunity to accept the manufacturer's price list for the contract or withdraw its bid proposal.
While this section reserves the right to the State to verify pricing with the manufacturer of the modular furniture lines, and compare the manufacturer's price list with that which was submitted by the contractor, it does not impose an obligation on the State to do so, nor does it create a right vested in the contractor to have the State contact the manufacturer to resolve a pricing ambiguity in the contractor's bid proposal.
In evaluating a deviation in plaintiff's bids due to its inclusion of price escalation stickers, plaintiff's argument that the deviation should be waived fails under the River Vale/Meadowbrook Carting materiality test. First, a waiver would deprive the State "of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements." Meadowbrook Carting, supra, 138 N.J. at 315, 650 A.2d *358 748. The RFP specified that the pricing was to remain firm for the life of the contract. Second, a waiver "would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition." Ibid. Here, allowing Jasper to choose one of the two interpretations of its pricing, one with the price increase and one without, after all of the bids are opened, would give it an unfair advantage over the other bidders. Waivers of an RFP deviation which would permit "post-bid... manipulation of the results have been declared unlawful." Suburban Disposal, Inc. v. Twp. of Fairfield, 383 N.J.Super. 484, 494, 892 A.2d 720 (App. Div.2006). "Such post-bid manipulations are repugnant to our public bidding laws." Id. at 493, 892 A.2d 720.

II.
Jasper next contends that the State's RFP specifications were so unclear and confusing that a statewide re-bid on the procurement should be ordered. We disagree.
The necessity of having precise specifications in a public bidding request is well established. Harms, supra, 137 N.J. at 36, 644 A.2d 76. In the case under review, only four of fifty-six contractors failed to meet the conditions set forth in the RFP. This figure is not so great as to raise serious questions regarding vagueness or ambiguity in the stated terms of the RFP and its addenda. Furthermore, the Director, at her discretion, may reject all bids and re-bid the entire procurement if it is in the public's best interest to do so. See, e.g., Marvec Const. Corp. v. Twp. of Belleville, 254 N.J.Super. 282, 294, 603 A.2d 184 (1992). Similarly, when the State or a municipal governing body "concludes in good faith that the purposes of the public bidding statutes are being violated, it may reject all bids submitted and in its discretion order a re-advertising of the contract." M.A. Stephen Constr. Co. v. Rumson, 117 N.J.Super. 431, 437, 285 A.2d 55 (App.Div.1971); Cardell, Inc. v. Woodbridge, 115 N.J.Super. 442, 451, 280 A.2d 203 (App.Div.1971).
However, "rebidding a contract is fraught with certain dangers." Marvec Const. Corp., supra, 254 N.J.Super. at 291, 603 A.2d 184. While in some circumstances "rebidding will benefit the public through achieving a lower price, the converse result of a higher contract price is also a factor to be considered." Ibid. The low bidders who gave their best possible bid may be discouraged and drop out of subsequent bidding rounds. Ibid. Or, "other bidders by reason of insight gained through revelation of the competition's bidding strategy may see the weaknesses in their own bids." Ibid. It cannot be presumed that "rebidding will ipso facto bring a lower price." Ibid. The potential also exists for rebidding to be "demanded until the `favorite son' candidate is awarded the contract." Ibid. For these reasons, the agency's power to reject bids is not unbridled. Cardell, supra, 115 N.J.Super. at 450, 280 A.2d 203. An unlimited power of blanket rejection and rebidding of an advertised RFP would in itself "afford a means by which the statute can be evaded under color of the rejection of any and all bids." Ibid. (internal quotations omitted).
Our public bidding statutes aim to "encourage contractors to submit bids for public improvements." Cardell, supra, 115 N.J.Super. at 450, 280 A.2d 203 (quoting Paterson Contracting Co. v. Hackensack, 99 N.J.L. 260, 122 A. 741 (E. & A.1923)). More contractors competing for awards under an RFP result in more advantageous pricing to the State. Ibid. "If bids are rejected arbitrarily or capriciously, contractors will not take the time and *359 expend the money necessary to submit proposals[,]" or worse, "[t]hey will infer favoritism." Ibid. "This will result in few bidders and higher bids." Ibid. "The statute providing for the award of a contract for a public improvement to the lowest responsible bidder was enacted for the protection of bidders." Ibid.
Here, the terms of the RFP were sufficiently clear to permit responsible bidders to submit conforming bids. To reverse the Director's determination in this matter, and grant one disappointed contractor a statewide re-bid, would be a costly and unnecessary exercise.
Affirmed.