**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0578-18T2

TERCO ENTERPRISES, LLC,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF TRANSPORTATION and
NEW JERSEY DEPARTMENT
OF THE TREASURY, DIVISION
OF PURCHASE AND PROPERTY,

     Respondents.

_____

> Argued August 13, 2019 – Decided August 29, 2019
>
> Before Judges Messano and Natali.
>
> On appeal from the New Jersey Department of the Treasury, Division of Purchase and Property.
>
> Kashif Taraq Chand argued the cause for appellant (Kaplan Williams & Graffeo, LLC, attorneys; Daniel G. P. Marchese, of counsel; Kashif Taraq Chand, on the briefs).
>
> George Edward Loeser, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal,

Attorney General, attorney; Beth Leigh Mitchell, Assistant Attorney General, of counsel; George Edward Loeser, on the brief).

PER CURIAM

The Division of Purchase and Property, Department of the Treasury (DPP), solicited bids "to provide snow plowing and spreading services on all State interstates and highways under the jurisdiction of [New Jersey Department of Transportation]."[1] The request for proposals (RFP) included more than three hundred individual "price lines," which generally delineated specific roadways in geographical areas throughout the state, and upon which bidders could choose to respond selectively by submitting proposed pricing. The RFP indicated the "procurement [would] be bid in three consecutive phases," with the DPP attempting to award all price lines in "Phase One."

According to the RFP, after Phase One, the DPP would solicit all responsive bidders to submit a Phase Two price sheet for those price lines that "remain[ed] un-awarded." The same procedure would be followed in Phase Three for those price lines not awarded after the first two phases of the bid. Critically, the RFP provided that "[u]nder no circumstances shall any" bidder

---

[1] The "base term" of the potential contract was October 1 through April 30 of 2018 and 2019, with three potential extensions of one-year each.

submit a Phase Two or Three price sheet containing "supplemental or additional information regarding other aspects of its previously-submitted bid. During Phase Two and Phase Three, the State will only consider the price sheets, and will not consider any additional or supplemental information or documents."

Terco Enterprises LLC (Terco) submitted Phase One bids on numerous lines, and the DPP issued a preliminary notice of intent (NOI) to award Terco a contract for one of the price lines. Although the DPP deemed Terco's bids on other price lines to be responsive, it recommended awards to other vendors whose bids were "most advantageous to the State, price and other factors considered." N.J.S.A. 52:34-12(a)(g). The DPP's later released recommendation report revealed a determination that Terco's bid was nonresponsive as to another forty-two price lines because it failed to include an "all-inclusive hourly hauling rate[.]"[2]

---

[2] Terco subsequently complained that because of the DPP's formatting of the Excel bid submission sheets, the place to submit this "all-inclusive hourly hauling rate" was on a different page. Indeed, in soliciting bids for Phase Two, the DPP brought to the attention of all who received the solicitation package, "issues" that occurred during the Phase One bidding process, including multiple bidders' failure to include an all-inclusive hourly rate for hauling services. On the Phase Two bidding sheets, all the required information was on the same page, and the DPP reminded prospective Phase Two bidders to submit the information. However, despite Terco's complaint that the location of this information item on a separate page unfairly prejudiced its Phase One bid,

The DPP solicited Terco to submit Phase Two bids, and Terco did on numerous line items, including some on which the DPP had determined Terco's earlier bids were nonresponsive for failing to include the all-inclusive hourly hauling rate. The DPP issued a Phase Two NOI awarding Terco an additional fifteen line items. Terco elected not to bid on any un-awarded sections during Phase Three. Although certain sections remained "open" after all three phases of the bidding process, the DPP elected to award contracts for most of the sections and provided final notice of the awards to Terco and the other successful bidders.

Another bidder, Jer-Car, Inc. (Jer-Car), submitted a protest essentially challenging the DPP's earlier decision to exclude it from the Phase Two and Three process. The DPP concluded Jer-Car's Phase One bid was unresponsive because it failed to include an all-inclusive hauling rate. Jer-Car cited the DPP's pre-award recommendation report, which noted that fifteen vendors' bids were nonresponsive for the same reason, and others, including Terco, failed to include this information but submitted other line-item bids that were fully responsive.

---

section 4.4.4.2(A)(2) of the RFP clearly notified bidders of the requirement to submit an all-inclusive hourly rate for hauling services.

In his final decision on Jer-Car's protest, the Acting Director cited the RFP's express provision that only bidders who submitted "a responsive [q]uote" in Phase One would be invited to submit bids in the following phases of the bid process. Jer-Car failed to submit a responsive bid in Phase One. However, the DPP allowed "partially responsive" bidders, like Terco, which "had a responsive price line within its [q]uote," to bid in Phases Two and Three.

Nevertheless, citing the RFP, which prohibited any bidder from "submit[ting] any supplemental or additional information regarding any other aspects of its previously-submitted bid," the Acting Director concluded the DPP improperly permitted Terco and two other bidders to "cure twenty non[-]responsive price lines by resubmitting pricing in a later Phase." The Acting Director "rescinded" the NOI as to these twenty line items and modified the NOI to reflect an award to the bidder "who would be next in line following the disqualification of the initial intended awardee." In the event there was no other responsive bidder, the Acting Director determined "the price line would be included within a supplemental future bidding opportunity for these services."

As a result, Terco retained the award made after Phase One and three additional line items awarded after Phase Two. Twelve other line items (the

disputed line items) were either awarded to other bidders or reserved for future bidding.

Terco filed a protest to the final decision in Jer-Car's protest.  It suffices to say that after much delay, and Terco's decision in the interim to file suit in the Law Division, the DPP issued a final agency decision that essentially reaffirmed the Acting Director's reasoning in the Jer-Car protest and denied Terco's request for a stay of any award on the disputed line items.[3]

Before us, Terco argues that its Phase Two bid conformed to "the [p]lain [l]anguage of the RFP," and the DPP's "retroactive decision" that Terco's Phase Two bid "[i]mpermissibly [s]upplemented and [a]mended [i]ts Phase One bid" lacked support in the record and disparately treated Phase Two bidders.  Terco also argues that the DPP's rescission of the intended Phase Two awards was "[d]e [f]acto [r]ulemaking."

Well-known standards guide our review.  "The public interest underlies the public-bidding process in this State."  Barrick v. State, 218 N.J. 247, 258 (2014).  Therefore, the bidding statutes "are construed as nearly as possible with

---

[3] Judge Mary Jacobson issued a stay pending Terco's motion for emergent relief to our court.  She subsequently granted the DPP's request to transfer the matter to our court.  See R. 1:13-4(a).  We denied Terco's request for a stay pending appeal and accelerated the appeal.

sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Ibid. (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985)). "An agency's choice from among responsible bidders under N.J.S.A. 52:34-12(a)(g) is reviewed under the gross abuse of discretion standard." Ibid. However, "the discretion accorded the Director of the [DPP] to administer the State public bidding process, while broad, is not limitless." In re Request for Proposals ##17DPP00144, 454 N.J. Super. 527, 559 (App. Div. 2018). The agency may not make an award to a bidder "whose proposal deviates materially" from the bid specifications or requirements. Barrick, 218 N.J. at 258-59. "[R]equirements that are material . . . are non-waivable; the winning bidder's proposal must comply with all material specifications." Id. at 259 (citing In re Jasper Seating Co., 406 N.J. Super. 213, 219 (App. Div. 2009)).

"The preliminary inquiry is, of course, whether the bid actually deviated from the solicitation for bids." In re Requests for Proposals, 454 N.J. Super. at 560 (citing Twp. of River Vale v. R. J. Longo Constr. Co., 127 N.J. Super. 207, 215-16 (Law Div. 1974)). An agency's decision whether a requirement is material, or whether a bid conforms to the specifications, "will not [be] upset

7

. . . unless [it] is shown to have been 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Barrick, 218 N.J. 259 (third alteration in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). "In applying that standard of review, 'an appellate court does not substitute its judgment . . . for that of [the] administrative agency.'" Id. at 260 (alteration in original) (quoting In re Young, 202 N.J. 50, 70, (2010)).

Section 1.1 of the RFP provided in relevant part:

> Under no circumstances shall any . . . [b]idder[] when submitting a Phase Two [] or Phase Three [] price sheet after being requested to do so by the State, submit any supplemental or additional information regarding any other aspects of its previously-submitted bid. During Phase Two and Phase Three, the State will only consider the price sheets, and will not consider any additional or supplemental information or documents.
>
> [(Emphasis added).]

Terco argues it complied with the plain language of the RFP by submitting conforming Phase Two bids on the disputed line items, and the DPP was required to "only consider the price sheets[.]" Terco contends the phrase "any additional or supplemental information or documents" means information other than the price sheets. Since it supplied only Phase Two price sheets, Terco argues the DPP's original Phase Two NOI was correct, and they should be awarded the disputed line items. We disagree.

Terco's interpretation ignores the first sentence of this section of the RFP, which specifically relates to Terco's "previously-submitted bid." It is undisputed that Terco's Phase One bid was nonresponsive as to the disputed line items, and, it is beyond question that Terco's Phase Two bid clearly contained "additional or supplemental information regarding any other aspects of [Terco's] previously-submitted bid" for the same disputed line items. (Emphasis added). Terco's interpretation would permit any bidder who submitted a non-responsive Phase One bid for a particular line item to cure the defect in Phase Two by simply supplying additional or supplemental information in direct contravention of the first sentence of this section of the RFP.

Terco contends that the RFP clearly separated the award process in each phase, essentially starting anew. This interpretation ignores the express language of Section 1.1 and other provisions of the RFP that clearly state only bidders who submitted a responsive proposal in Phase One could participate in Phase Two.

We also disagree with Terco's contention that its interpretation of the RFP is somehow more consonant with sound public policy. Allowing bidders to submit additional information in Phase Two, so as to make their original non-conforming bid conforming does not support unfettered competition on an even

9

playing field. In re Jasper Seating Co., 406 N.J. Super. at 224 (citing In re Protest of the Award of the On-Line Games Production & Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J. Super. 566, 598-603 (App. Div. 1995)). Terco seemingly submits that because the non-conformity in this case, i.e., failure to complete the price sheet because it was on two pages, was the product of an innocent mistake, we should overlook the express provisions of the RFP. However, under that scenario, bidders invited to submit bids on Phase Two price lines, having never bid on them during Phase One, would be clearly disadvantaged; and, as the Acting Director noted, partially compliant bidders, like Terco, would be advantaged over others, like Jer-Car, who may have only filed a non-compliant bid on one line item, for example, and, under the terms of the RFP, were barred from bidding in subsequent phases.

Under these circumstances, we cannot conclude that the DPP's construction of the RFP and implementation of the bidding process in its entirety was arbitrary, capricious or unreasonable, even though we might conclude a different process was preferable or even more likely to result in cost reductions to the public. Barrick, 218 N.J. at 260.

We also reject Terco's claim that the final agency decision on its protest was unauthorized "rulemaking" in violation of the Administrative Procedure

Act, N.J.S.A. 52:14B-1 to -15 (APA). "The APA defines an administrative rule as an agency's 'statement of <u>general applicability and continuing effect</u> that implements or interprets law or policy, or describes the organization, procedure or practice requirements' of the agency." <u>In re Authorization For Freshwater Wetlands Statewide Gen. Permit 6</u>, 433 N.J. Super. 385, 413 (App. Div. 2013) (emphasis added) (quoting N.J.S.A. 52:14B-2(e)). In the seminal case of <u>Metromedia, Inc. v. Director, Division of Taxation</u>, the Court identified six factors by which to assess whether agency action is actually rulemaking in contravention of the APA's requirements. 97 N.J. 313, 331-32 (1984).

However, "an agency decision in a contested case is not an administrative rule." <u>In re G. & J.K. Enters., Inc. v. Div. of Alcoholic Beverage Control</u>, 205 N.J. Super. 77, 85 (App. Div. 1985); <u>see also</u> N.J.S.A. 52:14B-2 (the definition of "'[a]dministrative rule' or 'rule' . . . does not include . . . agency decisions and findings in contested cases"). Terco's argument in this regard requires no further comment. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                    A-0578-18T2